## NATIONAL FEDERATION OF FEDERAL EMPLOYEES, LOCAL 1167, Petitioner,

v.

## FEDERAL LABOR RELATIONS AUTHORITY, Respondent.

### No. 81–2198.

United States Court of Appeals, District of Columbia Circuit.

Argued May 17, 1982.

Decided June 29, 1982.

Edwin Harvey, with whom Catherine Waelder, Washington, D. C., was on the brief, for petitioner.

William E. Persina, Atty., Federal Labor Relations Authority, with whom Mary Elizabeth Medaglia, Acting Sol., Federal Labor Relations Authority, Washington, D. C., was on the brief, for respondent.

Before MacKINNON, EDWARDS and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

In this case, we are asked to review a decision of the Federal Labor Relations Authority ("FLRA" or "Authority") holding that certain collective bargaining proposals were nonnegotiable under Title VII of the Civil Service Reform Act of 1978. In its petition for review, Local 1167 of the National Federation of Federal Employees ("Local 1167") challenges the decision of the FLRA with respect to two proposals that it made during collective bargaining negotiations with the Department of the Air Force, Headquarters, 31st Combat Support Group (TAC), Homestead Air Force Base, Florida ("Homestead Air Force Base" or "the Agency"). In order to decide this case, we must consider the procedural requirements of negotiability appeals before the FLRA and the substantive law of negotiability in the federal sector. For the reasons set forth

below, we affirm the Authority's decision, based on the record before it, that both Union bargaining proposals here at issue were nonnegotiable.

## I. BACKGROUND

### A. *The Negotiations and the Bargaining Proposals*

In early 1979, Local 1167 and Homestead Air Force Base began negotiations for a new collective bargaining agreement. Negotiations continued through the spring and summer. On August 14, 1979, Local 1167 received a letter from agency officials at Homestead Air Force Base asserting that six of the Union's bargaining proposals were not within the Agency's duty to bargain under the Civil Service Reform Act. The two proposals relevant to our review involve the "contracting out" of work performed by bargaining unit employees. The first of these proposals states:

*Article 12.1*

It shall be the policy of the Employer to consult openly and fully with the Labor Organization regarding any review of a function for contracting out within the unit. The Employer agrees that work shall not be contracted out when it can be demonstrated that work performed "in-house" is more economically and effectively performed. *"Milestone Charts" related to review or feasibility studies for contracting out of work will be made available to the Labor Organization as actions are taken in accordance with such charts.*[1]

The second contested proposal states:

*Article 12.3*

*The Labor Organization shall be furnished dates and times of the pre-bid and bid-opening conferences and shall have the right to have two Labor Organization representatives present at the conferences.* The contract will not be awarded for at least ten work days following the bid opening conference.[2]

### B. *FLRA Proceedings*

On August 27, 1979, Local 1167 appealed the Agency's claim of nonnegotiability to the FLRA, pursuant to section 7117(c)(2) of the Civil Service Reform Act, 5 U.S.C. § 7117(c)(2) (Supp. IV 1980). App. 1–11. The Authority granted Local 1167 an extension of time to comply with the filing requirements for negotiability appeals. App. 12–13; *see* 5 C.F.R. pts. 2424, 2429 (1982). Local 1167 complied in timely fashion. App. 14–16. Homestead Air Force Base then filed a timely statement explaining its allegations of nonnegotiability, as required by 5 U.S.C. § 7117(c)(3) (Supp. IV 1980). App. 17–33. Following its receipt of the Agency statement on November 21, 1979, Local 1167 had fifteen days to file a response. 5 U.S.C. § 7117(c)(4) (Supp. IV 1980). However, Local 1167 failed to meet this time limit when it responded on December 10, 1979, nineteen days after its receipt of the Homestead Air Force Base statement. App. 34–39.

The FLRA issued its Decision and Order on September 18, 1981. *National Federation of Federal Employees, Local 1167 (Homestead Air Force Base),* 6 F.L.R.A. No. 105 (1981). Because the response by Local 1167 to the Agency statement was untimely, the Authority refused to consider it in reaching its decision, *id.,* slip op. at 1, and accepted the factual representations made by Homestead Air Force Base. With respect to the "Milestone Charts" mentioned in the proposed Article 12.1, the FLRA stated:

[T]he Agency has explained that such charts are internal management recommendations, developed from feasibility studies, used by management officials in determining whether to contract out.

---

1. Only the italicized sentence in this proposal is before this court. The Agency has conceded the negotiability of the first sentence, and the Union does not seek review of the decision of the FLRA that the second sentence is nonnegotiable.

2. Only the italicized sentence in this proposal was challenged before the FLRA and is at issue in this review. The Agency has conceded the negotiability of the second sentence in the proposal.

Since this explanation is uncontroverted, it is adopted for purposes of this decision. *Id.*, slip op. at 4. With respect to the pre-bid and the bid-opening conferences mentioned in the proposed Article 12.3, the FLRA stated:

> The Agency states that the pre-bid and bid-opening conferences are "wholly management related meetings at which the management aspects of the contracting out issue are either discussed or acted on, and which occur after the union has been afforded the opportunity to comment on the contracting out proposal." Since this explanation of the purpose and function of these conferences is uncontroverted, it is adopted for purposes of this decision.

*Id.*, slip op. at 7. The FLRA also accepted the representation of Homestead Air Force Base that the proposed Article 12.3 was intended to permit the submission of views by Union officials in the pre-bid and bid-opening conferences. *Id.*

Based on the Agency explanations of the Milestone Charts, the bid conferences and the Union's intent with respect to Article 12.3, the FLRA ruled that the relevant portions of these two proposals were nonnegotiable. The Authority held that the last sentence of Article 12.1 was nonnegotiable because it would improperly involve Local 1167 "in management's internal deliberative process" and would "directly affect[ ] the exercise of management's rights under section 7106(a)(2)(B) to make determinations with respect to contracting out." *Id.*, slip op. at 5; *see* 5 U.S.C. § 7106(a)(2)(B) (Supp. IV 1980). The Authority also rejected the negotiability of the first sentence of Article 12.3, reasoning that Local 1167's involvement "in managerial deliberations and discussions . . . would directly interfere with

management's rights under the Statute to make determinations with respect to contracting out." *National Federation of Federal Employees, Local 1167*, 6 F.L.R.A. No. 105, slip op. at 7.

Local 1167 filed a timely petition for review of the FLRA Decision and Order, limiting its challenges to the italicized portions of the two proposals set forth above. This court has jurisdiction pursuant to 5 U.S.C. § 7123 (Supp. IV 1980).

## II. ANALYSIS

Local 1167 makes both procedural and substantive attacks on the decision of the FLRA. We turn first to the Union claim that the FLRA unnecessarily limited its inquiry into the factual circumstances and agency rules relevant to the two proposals. We then consider whether the Authority's decision is consistent with the Civil Service Reform Act and relevant precedent.[3]

### A. *The Processing of Negotiability Disputes Before the FLRA*

Negotiability disputes necessarily interrupt the normal process of collective bargaining. An agency's allegation that a union proposal falls outside of the public employer's duty to bargain at the least prevents the union from negotiating over the proposed contract term. In addition, the parties may be unable to agree on other contract terms until the negotiability dispute is resolved and, as a consequence, a final collective bargaining agreement may be prevented entirely.

Congress apparently understood the severe impact of negotiability disputes on effective collective bargaining. It therefore enacted section 7117(c) of the Civil Service

---

**3.** The Civil Service Reform Act provides that judicial review of the Authority's decisions shall be conducted in accordance with section 10(e) of the Administrative Procedure Act, 5 U.S.C. § 706 (1976). *See* 5 U.S.C. § 7123(c) (Supp. IV 1980). Because negotiability appeals are informal proceedings, the APA requires that a decision of the Authority be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A) (1976), or if it was reached

"without observance of procedure required by law," *id.* § 706(2)(D). *See National Fed'n of Fed. Employees v. FLRA*, 652 F.2d 191, 193 (D.C.Cir.1981). In addition, the Civil Service Reform Act requires that the factual findings of the Authority be "supported by substantial evidence on the record considered as a whole." 5 U.S.C. § 7123(c) (Supp. IV 1980); *see Professional Air Traffic Controllers Org. v. FLRA*, 685 F.2d 547, 575 (D.C.Cir. 1982).

Reform Act, which establishes an appeals procedure for the resolution of negotiability disputes by the FLRA on an expedited basis. 5 U.S.C. § 7117(c) (Supp. IV 1980).[4] The section sets rigid time limits for filing a union appeal, an agency explanatory statement and a union response, *see id.* § 7117(c)(2)–(4), and the section directs the Authority to issue its decision "at the earliest practicable date," *id.* § 7117(c)(6).[5] The appeals procedure is thus intended to resolve negotiability disputes speedily, thereby minimizing the interruption of normal collective bargaining.[6]

■ If Congress' purpose is to be achieved, the statutory time limits for filing union appeals, agency statements and union responses must be strictly observed. We therefore hold that the FLRA acted properly in the present case when .it refused to consider the untimely response by Local 1167 to the statement of Homestead Air Force Base. Indeed, we do not understand Local 1167 to argue otherwise.

---

4. Section 7117(c) provides:

(c)(1) Except in any case to which subsection (b) of this section applies, if an agency involved in collective bargaining with an exclusive representative alleges that the duty to bargain in good faith does not extend to any matter, the exclusive representative may appeal the allegation to the Authority in accordance with the provisions of this subsection.

(2) The exclusive representative may, on or before the 15th day after the date on which the agency first makes the allegation referred to in paragraph (1) of this subsection, institute an appeal under this subsection by—

(A) filing a petition with the Authority; and

(B) furnishing a copy of the petition to the head of the agency.

(3) On or before the 30th day after the date of the receipt by the head of the agency of the copy of the petition under paragraph (2)(B) of this subsection, the agency shall—

(A) file with the Authority a statement—

(i) withdrawing the allegation; or

(ii) setting forth in full its reasons supporting the allegation; and

(B) furnish a copy of such statement to the exclusive representative.

(4) On or before the 15th day after the date of the receipt by the exclusive representative of a copy of a statement under paragraph (3)(B) of this subsection, the exclusive representative shall file with the Authority its response to the statement.

(5) A hearing may be held in the discretion of the Authority, before a determination is made under this subsection. If a hearing is held, it shall not include the General Counsel as a party.

(6) The Authority shall expedite proceedings under this subsection to the extent practicable and shall issue to the exclusive representative and to the agency a written decision on the allegation and specific reasons therefore [sic] at the earliest practicable date.

5 U.S.C. § 7117(c) (Supp. IV 1980).

5. The language that became section 7117(c) of the Act was part of the Udall substitute for the version of Title VII reported by the House Committee on Post Office and Civil Service. *See* 124 Cong.Rec. 29,174–82 (1978) (Udall substitute). The House adopted the Udall substitute, and the Senate conferees accepted section 7117(c) without comment. Thus, the only legislative history regarding the section is the explanatory statement offered by Congressman Udall on the floor of the House:

Subsection (c) of the substitute provides an expedited appeals system for resolving negotiability disputes other than those involving "compelling need" determinations [covered by subsection 7117(b)]. The reported Title VII provides that such disputes be resolved through the unfair labor practice mechanism. The substitute provides that an exclusive representative may appeal an agency's allegation of non-negotiability to the Authority. The appeal may be filed, on or before the 15th day after the date on which the agency first makes its allegation, by filing a petition with the Authority and furnishing a copy to the head of the agency. On or before the 15th day after the agency head receives the copy of the petition, the agency must file a statement with the Authority either withdrawing the allegation or setting forth in full its reasons supporting the allegation. A copy is to be furnished to the exclusive representative, which then has 15 days to file a response with the Authority. The Authority shall expedite proceedings to the extent practicable and shall issue a written decision and supporting reasons at the earliest practicable date.

124 Cong.Rec. 29,184 (1978).

6. A union has the option of filing an unfair labor charge against an agency for refusal to bargain if the agency refuses to negotiate about a union proposal. *See* 5 U.S.C. § 7116(a)(5) (Supp. IV 1980). In most negotiability disputes, however, the appeals procedure of § 7117(c) will be preferred. The informal § 7117(c) procedure should be quicker and does not require the issuance of a complaint by the FLRA General Counsel.

Local 1167 does argue, however, that despite its failure to file a timely response, the FLRA had an obligation to undertake a "substantive independent analysis of the content of the proposals to determine what effect, if any, they had on management rights." Brief for Petitioner at 24. Except to the extent that the FLRA is required to make an independent statutory interpretation of the Civil Service Reform Act, we cannot agree.

█ We hold that, in connection with negotiability disputes under section 7117(c), the parties must satisfy two principal responsibilities. First, the parties bear the burden of creating a factual record sufficient for the Authority to resolve the negotiability dispute. The FLRA has the statutory power to hold a hearing to aid in its decision, but such hearings are discretionary. 5 U.S.C. § 7117(c)(5) (Supp. IV 1980). In other words, the Authority is not obligated to conduct an independent factual investigation in order to secure record proof with respect to either party's claims. Were it otherwise, prompt resolution of negotiability disputes would be impossible.

Second, the parties should direct the Authority's attention, with as much specificity as possible, to the statutes and regulations relevant to an agency's duty to bargain. *See* 5 C.F.R. §§ 2424.6(a)(2), 2424.7(b) (1982). While the Authority plainly is not foreclosed from making an independent inquiry into the law relevant to each agency's exercise of management rights, the parties should not expect the Authority, *sua sponte*, to locate, analyze and apply all arguably pertinent regulations from the myriad of federal regulations governing the numerous federal agencies within the Authority's jurisdiction. The section 7117(c) appeals procedure could not possibly be expeditious if the FLRA were required in every case to supplement a party's incomplete analysis with respect to matters foreign to the Authority's area of expertise.

█ The FLRA fully met its procedural obligations in the present case. Because Local 1167 did not file its response to the Agency's statement within the statutory period, the Authority could properly accept the Agency's uncontroverted factual assertions regarding the purposes of Milestone Charts and of pre-bid and bid-opening conferences and the intent of Article 12.3. Admittedly, in its initial appeal, Local 1167 generally directed the Authority's attention to Office of Management and Budget (OMB) Circular A-76 (rev. Mar. 29, 1979), which "establishes the policies and procedures used to determine whether needed commercial or industrial type work should be done by contract with private sources or in-house using Government facilities and personnel." *Id.* at 1, Volume of Exhibits at 3. The FLRA decision reveals, however, that the Authority considered OMB Circular A-76, but did not find it facially inconsistent with the detailed explanatory statement of Homestead Air Force Base.[7] This finding was not irrational. We therefore conclude that the Authority followed the prescribed statutory procedures in this case and that its findings are supported by the record.

### B. *Negotiability of the Proposals*

█ The obligation of a federal agency to bargain with the exclusive representative of

---

7. In its briefs to this court, Local 1167 identifies for the first time the specific passages from OMB Circular A-76 and from other agency directives that it relies upon to dispute the explanatory statement offered by Homestead Air Force Base. While these passages arguably lend some support to Local 1167's factual assertions, they do not necessarily disprove the Agency statement. In any event, Local 1167 should have noted these specific references before the FLRA.

Similarly, Local 1167 attempts to refute the Agency's factual assertions with documentary evidence which it offers for the first time before this court. Local 1167, however, has failed to show "that there were reasonable grounds for the failure to adduce the evidence ... before the Authority," and we therefore may not consider it. 5 U.S.C. § 7123(c) (Supp. IV 1980); *cf. Glomac Plastics, Inc. v. NLRB*, 592 F.2d 94, 100 (2d Cir. 1979) (applying analogous section in National Labor Relations Act); *Glaziers' Local 558 v. NLRB*, 408 F.2d 197, 202–03 (D.C.Cir.1969) (same).

its employees over the conditions of employment does not extend to the agency's exercise of the management rights declared in section 7106(a) of the Civil Service Reform Act. 5 U.S.C. § 7106(a) (Supp. IV 1980). Included in these express management rights is the authority "to make determinations with respect to contracting out." *Id.* § 7106(a)(2)(B). At the same time, section 7106(b) provides that section 7106(a) does not preclude negotiations about the "procedures which ... the agency will observe in exercising any authority." *Id.* § 7106(b)(2). "Thus, Title VII and § 7106 establish a balance between the nonnegotiable substantive rights of management and the negotiable procedures to be followed when management exercises its substantive rights." *Veterans Administration Medical Center v. FLRA,* 675 F.2d 260, 262 (11th Cir. 1982).

■ In the present case, the FLRA determined the negotiability of Local 1167's proposals under the Authority's "direct interference" test. *See Department of Defense v. FLRA,* 659 F.2d 1140, 1159–60 (D.C.Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982).[8] Based on the factual record before it, the Authority concluded that the release of Agency deliberative memoranda under the proposed Article 12.1 would impair the Agency's decision-

making process regarding contracting out.[9] Similarly, the Authority concluded that the participation of Local 1167 representatives at bid conferences under the proposed Article 12.3 would directly interfere with Agency deliberations. We cannot say that these conclusions were unreasonable. "Congress intended the needed judgments to be made, not by this court, but by the Authority." *Id.* at 1161. Therefore, because the Authority's judgment in this case was not arbitrary or capricious, we affirm it.[10]

### III. CONCLUSION

We recognize that the result in this case is somewhat anomalous. Because Local 1167 filed its response to the explanatory statement of Homestead Air Force Base *four days* late, the FLRA refused to consider it. The FLRA then issued its decision in the case *twenty-one months* after Local 1167's tardy filing. Yet today, we hold that Congress' concern for the expeditious resolution of negotiability disputes mandates strict application of the time limits in section 7117(c) and rules out any obligation by the FLRA to supplement the parties' submissions.

Unfortunately, we can do nothing in the present case to rectify the obvious disparity between congressional intent and Authority

---

**8.** The FLRA applies the "direct interference" test to bargaining proposals which "stand close to the uncertain border between procedure and substance." *Department of Defense v. FLRA,* 659 F.2d 1140, 1159 (D.C.Cir.1981) (footnote omitted), *cert. denied,* —— U.S. ——, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982). In contrast, proposals regarding "more nearly 'pure' procedures, which have less direct substantive repercussions," *id.* at 1152, are negotiable "unless their adoption would prevent the agency from 'acting at all,'" *id.* at 1153. *See also Navy Pub. Works Center v. FLRA,* 678 F.2d 97, 100 n.3 (9th Cir. 1982). The FLRA's application of the "direct interference" test to this case was not unreasonable. Notably, the plain language of § 7106(a)(2)(B) protects not only an agency's authority to contract out work, but also its authority "*to make determinations* with respect to contracting out." 5 U.S.C. § 7106(a)(2)(B) (Supp. IV 1980) (emphasis added). *Cf. Department of Defense v. FLRA,* 659 F.2d at 1159–62 (management authority to assign employees includes authority to decide which employees to assign).

**9.** The FLRA explicitly noted that its decision "should not ... be construed as affecting the Union's right, pursuant to section 7114(b)(4) of the Statute, to obtain upon request appropriate data '... which is reasonably available and necessary for full and proper discussion, understanding, and negotiation of subjects within the scope of collective bargaining[.]'" *National Fed'n of Fed. Employees, Local 1167,* 6 F.L.R.A. No. 105, slip op. at 5 n.6 (1981); *see* 5 U.S.C. § 7114(b)(4) (Supp. IV 1980). We agree.

**10.** Our affirmance of the FLRA decision that these two proposals are nonnegotiable is, of course, based upon the record in this case. Our decision therefore does not preclude a labor organization from proposing similar contract terms in other negotiations. That labor organization, however, would have to establish by record evidence that its proposed terms would meet the negotiability requirements of the Civil Service Reform Act in the factual context of that case.

practice. Local 1167 failed to comply with the statutory requirements, and the Authority's decision, although long delayed, was not legally flawed. The Authority's decision warrants affirmance, but we have no praise for the FLRA case-handling process. Little is gained by insisting that the parties comply with strict time limits in order to expeditiously resolve negotiability disputes, only to have the FLRA take nearly two years to decide a relatively simple case. In this instance, the adverse consequence of the FLRA delay is clear: Local 1167 has been effectively foreclosed from negotiating a new collective bargaining contract to replace the agreement with Homestead Air Force Base that expired in January 1979. App. 62.

Even more unfortunate, it appears that the delay in this case was not unusual. One scholar has noted that "[i]n actual practice, the FLRA is taking from three months to more than a year before issuing negotiability decisions. This creates the difficulty of negotiations at the bargaining table being held in limbo until the FLRA issues the negotiability decision." H. Robinson, Negotiability in the Federal Sector 188 n.15 (Ithaca, New York: School of Industrial and Labor Relations, Cornell University, 1981). Clearly, this is not what Congress envisioned when it enacted section 7117(c), *see* 5 U.S.C. § 7117(c)(6) (Supp. IV 1980), and it does not fulfill the Authority's "responsibil[ity] for carrying out the purpose of [Title VII of the Civil Service Reform Act]," *id.* § 7105(a)(1). We can only admonish the Authority in the strongest possible terms to improve upon its sad performance.

## IV. DISPOSITION

For the foregoing reasons, we conclude that the FLRA properly rejected the tardy response by Local 1167 to the statement of Homestead Air Force Base, that the findings of the FLRA are supported by the record, and that the decision of the FLRA is consistent with the Civil Service Reform Act and relevant precedent. We therefore deny the petition for review and affirm the decision of the FLRA.

*So ordered.*