Joanna PETRY, et al.

v.

John BLOCK, Secretary of Agriculture, et al., Appellants.

Joanna PETRY, et al.

v.

John BLOCK, Secretary of Agriculture, et al., Appellants.

Joanna PETRY, et al., Appellants,

v.

John BLOCK, Secretary of Agriculture, et al.

Nos. 82–1804, 82–1840 and 82–1884.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 2, 1982.

Decided Jan. 21, 1983.

Nicholas S. Zeppos, Atty., Dept. of Justice, with whom Stanley S. Harris, U.S. Atty., and Leonard Schaitman, Atty., Dept. of Justice, Washington, D.C., were on the brief, for appellants in 82–1804 and 82–1840, and cross-appellees in 82–1884.

Kathleen A. McKee, Alexandria, Va., for appellees in 82–1804 and 82–1840, and cross-appellants in 82–1884.

Barbara Milstein, Washington, D.C., was on the brief for amici curiae, urging affirmance.

Before GINSBURG and SCALIA, Circuit Judges, and GESELL,* Judge, United States District Court for the District of Columbia.

Opinion PER CURIAM.

PER CURIAM:

The Secretary of Agriculture appeals a preliminary injunction ordered by the District Court setting aside an interim regulation promulgated by the Secretary pursuant to a recent amendment to the Department's Child Care Food Program (CCFP). *See* 42 U.S.C. § 1766 *et seq.* (1976). The sole issue on appeal is whether the District Court misinterpreted the meaning and effect of the amendment in setting aside the regulation.

The CCFP provides financial assistance to the states for meals served to children in day care homes. Under implementing regulations each day care home receiving assistance must have a sponsoring organization to supervise the home and assist in the administration of the CCFP. The sponsoring organizations are in turn reimbursed out of CCFP funds for administrative expenses incurred in supervising the day care homes. *See* 7 C.F.R. § 226 *et seq.* (1982). Appellees/cross-appellants are various individuals and organizations who participate in the CCFP in several states.

In 1981, concerned with the rapid increases in the level of federal spending, Congress passed the Omnibus Budget Reconciliation Act ("OBRA"), reducing the expenditures of a variety of federal programs. Pub.L. 97-35, 95 Stat. 357 (Aug. 13, 1981). Included in OBRA were amendments to the CCFP. These amendments ordered the Secretary to reduce federal expenditures for the CCFP. Specifically, section 810(d)(3)(B) of OBRA (codified at 42 U.S. C.A. § 1766(f)(3)(B) (West Supp.1982)) provides:

> Family or group day care home sponsoring organizations shall also receive reimbursement for their administrative expenses in amounts not exceeding the maximum allowable levels prescribed by the Secretary. Such levels shall be adjusted July 1 of each year to reflect changes in the Consumer Price Index for all items for the most recent 12-month period for which such data are available. *The maximum allowable levels for administrative expense payments, as in effect as of the date of the enactment of this subparagraph, shall be adjusted by the Secretary so as to achieve a 10 percent reduction in the total amount of reimbursement provided to institutions for such administrative expenses.* In making the reduction required by the preceding sentence, the Secretary shall increase the economy of scale factors used to distinguish institutions that sponsor a greater number of family or group day care homes from those that sponsor a lesser number of such homes. [Emphasis added.]

Although OBRA was signed into law on August 13, 1981, Congress provided specifically that the amendments to the CCFP were to take effect on January 1, 1982.

On January 26, 1982, an interim rule setting forth new maximum allowable reimbursement rates was published in the *Federal Register* and made retroactive to January 1, 1982, to comply with the requirements of OBRA. Past experience in the CCFP indicated that sponsoring organizations often were reimbursed at rates less than the maximum allowable rates. In order to achieve the overall ten percent reduction in administrative reimbursements actually provided to sponsoring organizations, the Secretary, among other changes, reduced the maximum allowable rate by considerably more than ten percent in some cases. 47 Fed.Reg. at 3539.

Appellees brought the instant action in the District Court for declaratory and injunctive relief alleging that the regulation was inconsistent with the amendment. Specifically, appellees claim that OBRA directed the Secretary to reduce the then-existing maximum rates by an average of ten percent. Rates for larger sponsors might

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

be reduced by more than ten percent, provided that overall reductions in rates did not exceed ten percent, and provided further that the overall cost saving achieved was no greater than ten percent. Brief for Appellees at 11, 13–14. In no event, according to appellees, could the Secretary reduce *all* of the maximum rates by *more* than ten percent. The challenged regulation, appellees contend, violated OBRA in that it effected reductions that, for the most part, ranged from about twenty to thirty-seven percent in the maximum rates in order to achieve an overall ten percent reduction in the total actual reimbursements paid under the CCFP.

The District Court found that the Secretary had based reductions in the administrative reimbursement rate on administratively determined *actual* reimbursement rates rather than its *maximum allowable* reimbursement rates. Relying heavily on post-enactment statements of interested Senators involved in the legislative process, the District Court then concluded as a matter of law that:

> Section 810(d)(3)(B) of the Omnibus Budget and Reconciliation Act of 1981 requires the Secretary of USDA to effect reductions in administrative payments to sponsoring organizations of family day care homes by 10% based on the maximum allowable reimbursement rate.

It is this finding and conclusion of law that the Secretary challenges in this proceeding. We granted a stay pending receipt of full briefs and argument.

■ We now hold that the District Court's interpretation of the statute was in error. The language of 810(d)(3)(B) is clear and unambiguous on its face. The Secretary was directed to reduce the maximum rates to effect a ten percent reduction in total reimbursement provided. That is what he has done. The statute did not direct the Secretary simply to reduce the maximum allowable rates but rather to reduce the maximum rates in a manner which would achieve the stated congressional purpose of reducing administrative costs. The ten percent figure modifies the phrase "to-

tal amount of reimbursement provided" and not the phrase "maximum allowable levels for administrative expense payments [then] in effect."

This is doubly apparent when 810(d)(3)(B) is compared with 810(d)(3)(A) of the Act, dealing with the "reimbursement factor" paid to day care homes based on the costs of obtaining and providing meals. Section 810(d)(3)(A) directs that "[t]he reimbursement factor in effect as of the date of the enactment of this sentence shall be reduced by 10 percent." The language of that section demonstrates that had Congress wanted simply to cut existing rates by ten percent, it was capable of drafting clear language directing the Secretary to do so. Moreover, since many sponsoring organizations were being reimbursed at levels significantly less than the maximum allowable rates, the congressional budgetary purpose of OBRA would be undermined by the interpretation espoused by the District Court because a ten percent reduction in funds provided could not have been achieved.

■ Where the language of the statute is clear and unambiguous, the starting point for interpreting the statute is the language itself and there is neither need nor warrant to look elsewhere. *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). The District Court relied improperly on the post-enactment statements of legislators involved in the enactment process. Such statements have no probative weight and represent only the personal views of the legislator. *Bread Political Action Committee v. Federal Election Commission*, 455 U.S. 577, 581–84, 102 S.Ct. 1235, 1238–39, 71 L.Ed.2d 432 (1982). Accordingly, the judgment of the District Court must be reversed.

While we have upheld the Secretary's interpretation of the amendment, various issues remain for resolution by the District Court relating to the manner in which the challenged regulation was promulgated and its reasonableness in the light of facts presented. We express no view on these or related matters.

*Reversed and remanded.*