AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES, AFL–
CIO, LOCAL 3090, Petitioner,

v.

FEDERAL LABOR RELATIONS
AUTHORITY, Respondent.

No. 84–1439.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 2, 1985.

Decided Nov. 22, 1985.

William J. Stone, with whom Mark D. Roth, Washington, D.C., was on the brief, for petitioner.

William E. Persina, Associate Sol., Federal Labor Relations Authority, with whom Ruth E. Peters, Sol., Steven H. Svartz, Deputy Sol., and Robert J. Englehart, Atty., Federal Labor Relations Authority, Washington, D.C., were on the brief, for respondent.

Before MIKVA and SCALIA, Circuit Judges, and HAROLD H. GREENE,* District Judge.

Opinion for the Court filed by District Judge HAROLD H. GREENE.

Concurring opinion filed by Circuit Judge SCALIA.

HAROLD H. GREENE, District Judge:

Petitioner American Federation of Government Employees (AFGE) seeks review of a dismissal by the Federal Labor Relations Authority (FLRA) of an unfair labor practice complaint initiated by AFGE against a federal agency on account of that agency's refusal to comply with an arbitrator's award. The agency had filed exceptions to the arbitrator's decision but it had neither sought nor obtained a stay of that decision. We agree with petitioner that, absent a stay, the agency was obligated to comply with the arbitration decision, and that the dismissal of the unfair labor practice complaint was improper.

I

The facts are undisputed.[1] In March, 1981, officials of the United States Soldiers' Home and Airmen's Home (Home) suspended, and then fired, a nursing assistant who had been accused of mistreating patients. Petitioner AFGE, the employee's bargaining representative, grieved the employee's suspension and discharge. The grievance was submitted to arbitration under the terms of the collective bargaining agreement between petitioner and the Home. After extensive hearings and briefing, the arbitrator, on March 25, 1982, issued an opinion and order sustaining the grievance and ordering the grievant reinstated, with backpay, within ten days of the order.

On April 22, 1982, the Home timely[2] filed with the FLRA exceptions to the arbitrator's award in accordance with Title VII of the Civil Service Reform Act.[3] How-

---

* Of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a).

1. Indeed, the unfair labor practice proceeding reviewed here was decided administratively on a stipulated factual record.

2. Section 701(b) of Title VII, 5 U.S.C. § 7122(b) (1976 and Supp. V), the provision in force at the time the Home appealed the arbitration award, provided that:

    If no exception to an arbitrator's award is filed under subsection (a) [5 U.S.C. § 7122(a)] during the 30-day period beginning on the date of such award, the award shall be final and binding. An agency shall take the actions required by an arbitrator's final award.

    See also, 5 C.F.R. § 2425.1(b) (1982). Subsequent to the events recounted in this opinion

Congress amended the statute to provide that the 30-day period would run from the date on which the arbitrator's award was served on the party filing exceptions, Pub.L. 98–224 § 4, 98 Stat. 48 (1984), 5 U.S.C.A. § 7122(b) (1979 and Supp.1985), and the FLRA amended its regulations accordingly. See 5 C.F.R. § 2425.1(b) (1985).

3. Pub.L. No. 95–454, Title VII, § 701, 92 Stat. 1192 (1978), codified at 5 U.S.C. §§ 7101 et seq. Section 701(a) of Title VII, 5 U.S.C. § 7122(a), provides that the FLRA may review an arbitrator's award to determine if it is deficient "(1) because it is contrary to any law, rule, or regulation; or (2) on other grounds similar to those applied by Federal courts in private sector labor-management relations," and that the agency may take appropriate necessary actions to alter or modify the award.

ever, notwithstanding FLRA regulations codified in 5 C.F.R. § 2429.8 which specify that the filing of exceptions does *not*, by itself, stay an arbitration award,[4] the Home neither requested a stay of the arbitration award nor did it comply with the award.

Three weeks later, when it had become apparent that the Home would not comply, the union filed an unfair labor practice charge against the Home with the FLRA.[5] The charge alleged that the Home's refusal violated 5 U.S.C. § 7122(b) which requires government agencies to comply with final arbitration awards,[6] and that this violation constituted an unfair labor practice within the meaning of 5 U.S.C. §§ 7116(a)(1), (8).[7] On July 29, 1982, the FLRA General Counsel issued an unfair labor practice complaint based on the charge, and the case was assigned to an Administrative Law Judge for the issuance of a recommended decision and order.

On November 24, 1982, the ALJ issued a decision recommending that the complaint be dismissed. His decision cited essentially two factors: (1) that the language of section 7122(b) does not, in so many words, provide that arbitration awards to which exceptions have been filed are final and binding,[8] and (2) that the FLRA, in a notice of proposed rulemaking (which was subsequently withdrawn), had indicated its view that an arbitration award should not be regarded as final if exceptions thereto had been filed. See p. 19, *infra.*

Some nineteen[9] months later, the FLRA affirmed the ALJ's decision.[10] The Authority, in a brief decision,[11] adopted the ALJ's analysis; AFGE timely requested reconsideration; and when reconsideration was denied, it petitioned this court for review.[12]

## II

■■■ The basic question[13] in this case is whether the FLRA properly construed 5

---

**4.** 5 C.F.R. § 2429.8 (1985), provides:

(a) A request for a stay shall be entertained only in conjunction with and as a part of an exception to an arbitrator's award filed under Part 2425 of this subchapter. *The filing of an exception shall not itself operate as a stay of the award involved in the proceedings.*

(b) A timely request for a stay of an arbitrator's award shall operate as a temporary stay of the award. Such temporary stay shall be deemed effective from the date of the award and shall remain in effect until the Authority issues its decision and order on the exception, or the Authority or its designee otherwise acts with respect to the request for the stay.

(c) A request for a stay of an arbitrator's award will be granted only where it appears, based upon the facts and circumstances presented, that:

(1) There is a strong likelihood of success on the merits of the appeal; and

(2) A careful balancing of all the equities, including the public interest, warrants issuance of a stay (emphasis added).

**5.** See generally 5 U.S.C. § 7118; 5 C.F.R. § 2423.

**6.** See *supra* note 2.

**7.** 5 U.S.C. § 7116(a) provides that:

... it shall be an unfair labor practice
(1) to interfere with, restrain, or coerce any employee in the exercise by the employee of any right under this chapter; ...

&ast; &ast; &ast; &ast; &ast; &ast;

(8) to otherwise fail or refuse to comply with any provision of this chapter.

**8.** That being so, according to the ALJ, the Home was not required to comply with the award, and its failure to do so could not constitute an unfair labor practice under 5 U.S.C. § 7116(a).

**9.** Long delays in Authority decisionmaking are not uncommon. See *AFGE v. FLRA*, 593 F.Supp. 1203, 1209 (D.D.C.1984). This court has also repeatedly chastised the FLRA in other contexts for its delay in deciding cases. See, e.g., *Nat'l Federation of Federal Employees, Local 1167 v. FLRA*, 681 F.2d 886, 892 (D.C.Cir.1982).

**10.** The FLRA's decision is reported at 15 FLRA No. 26 (1984).

**11.** The decision does not even mention the FLRA's stay regulations reprinted in note 4, *supra.*

**12.** We have jurisdiction pursuant to 5 U.S.C. § 7123, which provides, *inter alia*, that "[a]ny person aggrieved by any final order of the Authority ... may ... institute an action for judicial review of the Authority's order ... in the United States Court of Appeals for the District of Columbia."

**13.** Although neither party has discussed this issue, the Home's ultimate compliance with the arbitrator's award raises an obvious question whether there remains a live case or controver-

U.S.C. § 7122(b) as not requiring agency compliance with arbitration awards to which unresolved exceptions have been taken on the ground that such awards are not "final" within the meaning of the statute. If the awards are final, as petitioner contends, the Home's failure to comply (absent a stay) was a violation of section 7122 and an unfair labor practice under 5 U.S.C. §§ 7116(a)(1), (8). If, on the other hand, such awards are not final, as the FLRA held in this case, then neither a violation of section 7122 nor an unfair labor practice has occurred.

The scope of our review of the FLRA's decision is governed by section 701 of the Act, 5 U.S.C. § 7123, which subjects Authority decisions to review under the Administrative Procedure Act's arbitrary, capricious, and abuse of discretion standard, 5 U.S.C. § 706. See *National Treasury Employees Union v. FLRA*, 721 F.2d 1402, 1405 (D.C.Cir.1983). As the Supreme Court has recognized, under this standard the Authority is entitled to "considerable deference when it exercises its 'special function of applying the general provisions of the Act to the complexities' of federal labor relations." *Bureau of Alcohol, To-*

*bacco and Firearms v. FLRA*, 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983) (citation omitted). At the same time, the Court has also noted that, while reviewing courts should uphold reasonable and defensible agency constructions of their organic statutes, they should not "rubber stamp ... administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute." *Id.* It is with these guidelines in mind that we examine the FLRA decision and the statute.

### A. *Statutory Language*

■ We begin our analysis, as always, by considering the relevant statutory language.[14] See *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *National Wildlife Federation v. Gorsuch*, 693 F.2d 156, 170 (D.C. Cir.1982). As indicated,[15] section 7122(b) provides in relevant part as follows:

> If no exception to an arbitrator's award is filed under subsection (a) of this section [within 30 days], the award shall be final and binding. An agency shall

---

sy for resolution by this court. If that compliance completely resolved the dispute between the Home and AFGE and cured any unfair labor practice the Home may have committed, it would be the court's duty to dismiss this case as moot, rather than to give an unauthorized advisory opinion in derogation of Article III. See *Iron Arrow Honor Society v. Heckler*, 464 U.S. 67, 70–71, 104 S.Ct. 373, ———, 78 L.Ed.2d 58 (1983) (per curiam); *Monzillo v. Biller*, 735 F.2d 1456, 1459 (D.C.Cir.1984).

However, our review of the relevant legislation and of the record in this case persuade us that this case is not moot. In addition to issuing a cease and desist order upon a finding of an unfair labor practice, the FLRA is authorized to order "such other action as will carry out the purpose" of the Federal Labor-Management Relations Act. 5 U.S.C. § 7118(a)(7)(D); 5 C.F.R. § 2423.29. This "other action" may include the posting of a notice indicating that an agency has been found to have committed an unfair labor practice and that it has been ordered to cease committing such practices in the future. See *American Federation of Governmental Employees v. FLRA*, 716 F.2d 47, 51 (D.C.Cir.1983) (per curiam). An order requiring the Home to post

such a notice would of course afford petitioner an as yet unrealized remedy for the alleged unfair labor practice. The existence of this additional remedy, and this court's concomitant ability to afford petitioner relief beyond that already obtained, establishes that a live controversy still exists between the parties and that this case is therefore not moot. See *Doe v. Harris*, 696 F.2d 109, 112 (D.C.Cir.1982). See also, *FLRA v. Social Security Administration*, 753 F.2d 156, 162–63 (D.C.Cir.1985).

**14.** With respect to issues of statutory construction such as that presented here, if the congressional intent is apparent from the plain language of the statute, or from its legislative history, then that intent must be given effect. See *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, ———, 104 S.Ct. 2778, 2782 n. 9, 81 L.Ed.2d 694 (1984). If the Congress has not directly addressed the particular issue, then "the question for the Court is whether the agency's answer is based on a permissible construction of the statute." *Id.* See also, *Motor Vehicle Manufacturers Association v. EPA*, 768 F.2d 385, 389, 390 (D.C.Cir.1985).

**15.** See note 2, *supra.*

take the actions required by an arbitrator's final award.

It is apparent from an examination of this language that it does not directly address the issue presented in this case; *i.e.,* the status of arbitral awards to which exceptions have timely been taken. Clearly, the statute requires agencies to take actions required by an arbitrator's final award, and it further provides that awards to which no exceptions have been taken are "final and binding." The statute does not say, however, that awards to which exceptions have not been taken are the only awards that are "final" within the meaning of the statute, nor does it say that awards to which exceptions have timely been taken are not "final." On both of these questions, the statute is simply silent.

To be sure, if the phrase "arbitrator's final award" could not reasonably in context be read to include arbitration awards to which unresolved exceptions are pending, then any statutory ambiguity would only be illusory. See *Howe v. Smith,* 452 U.S. 473, 483, 101 S.Ct. 2468, 2475, 69 L.Ed.2d 171 (1981); *Petry v. Block,* 697 F.2d 1169, 1171 (D.C.Cir.1983) (per curiam). That, however, is not the case. There are at least two analogous legal contexts, of which the Congress undoubtedly was aware,[16] in which adjudicative decisions are characterized as "final" notwithstanding the availability of further review.

The most obvious analogy is to private sector labor arbitrations. Such arbitrations are characterized as final decisions with which parties must comply, even though, like federal employee arbitrations, they are subject to limited review in subsequent proceedings to determine their compliance with applicable law. See *United Steelworkers v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 596, 599, 80 S.Ct. 1358, 1360, 1362, 4 L.Ed.2d 1424 (1960); *Devine v. White,* 697 F.2d 421, 436 (D.C.

Cir.1983); see generally, Elkouri and Elkouri, *How Arbitration Works,* 65–66, 87–88 (4th ed. 1985); Updegraff, *Arbitration and Labor Relations,* 275–92 (3d ed. 1970). Indeed, it is a cardinal principle of arbitration that such awards are reviewable and enforceable only if they are "final"—that is, if they purport to resolve all aspects of the dispute being arbitrated. See *Matter of Michaels and Mariforum Shipping, S.A.,* 624 F.2d 411, 413–14 (2d Cir.1980); see generally, Elkouri, *supra,* at 255; Updegraff, *supra,* at 279–81.

Congress clearly was aware of the private sector labor arbitration experience,[17] and it is therefore reasonable to conclude that, in drafting the language of section 7122(b), Congress had the private sector model in mind, and that the statutory phrase "arbitrator's final award" may properly be read in light of the meaning generally assigned to that phrase in the private sector arbitration context. See *Devine v. White, supra,* 697 F.2d at 432–33.

Another analogy of which the Congress may be deemed to have been aware is the federal judicial process. The general rule in the federal courts is that appellate review may be had only of "final decisions" of district courts—that is, of judgments that constitute full resolutions on the merits. See 28 U.S.C. § 1291; *Liberty Mutual Insurance Co. v. Wetzel,* 424 U.S. 737, 743–44, 96 S.Ct. 1202, 1206–07, 47 L.Ed.2d 435 (1976). Compliance with such final judgments is, of course, required, unless the particular judgment is stayed by the district court or the court of appeals pending resolution of the appeal. See Fed.R. App.P. 8; Fed.R.Civ.P. 62; see generally, 11 C. Wright and A. Miller, *Federal Practice and Procedure:* Civil §§ 2902–08 (1973 and Supp.). Thus, if the word "final" as used in section 7122(b) is read to have the same meaning as it does in the judicial appellate context, arbitrators' awards which have been appealed by means of

---

**16.** Cf. *Cannon v. University of Chicago,* 441 U.S. 677, 697–99, 99 S.Ct. 1946, 1958, 60 L.Ed.2d 560 (1979).

**17.** See 5 U.S.C. § 7122(a)(2) (providing that the FLRA may review arbitration awards for deficiency "on other grounds similar to those applied by Federal courts in private sector labor-management relations").

taking exceptions could be considered to be "final" within the meaning of the statute.

To be sure, these analogies, and congressional awareness of their existence, do not conclusively establish that the word "final" in section 7122(b) must be read to include arbitrators' awards to which exceptions are pending. However, together with the failure of section 7122(b) specifically to address the situation of unstayed exceptions, they do establish that the statutory language is sufficiently ambiguous [18] to permit resort, in addition to that language, to other traditionally recognized indicia of legislative intent.

### B. *Legislative History*

The legislative history of section 7122(b) is unfortunately unenlightening as to the finality, or lack thereof, of arbitral awards to which exceptions have been filed.

The language of section 7122(b) originated in the House of Representatives version of what ultimately became the Federal Labor-Management Relations Act.[19] In fact, the relevant section of the House bill is virtually identical to the provision that was finally enacted.[20] The Committee Report accompanying the bill described the procedures under which exceptions could be filed and reviewed by the FLRA, indicated that the committee had rejected a proposal that the Comptroller General be given plenary authority to review arbitration awards, and noted that the proposed language would require agencies to take the actions required by final arbitration awards.[21] But the Report does not elaborate on what is meant by the phrase "final arbitral award" beyond the statutory language itself.

The Conference Committee adopted the House provision, which had no counterpart in the Senate bill,[22] and its report explained the purpose of the provision as follows:

... The conferees adopted the House provision. The intent of the House in adopting this provision was to make it clear that the awards of arbitrators, when they become final, are not subject to further review by any other authority or administrative body, including the Comptroller General.[23]

It is fair to conclude that Congress adopted the section 7122(b) language primarily to make certain that arbitration awards would be subject to review only by the FLRA. Beyond that, none of the legislative materials elaborate further on the question of when arbitral awards to which exceptions have been taken become final. In short, while the legislative history of section 7122(b) underscores the congressional intent that agencies comply with final arbitration awards, and that the arbitration process provide an efficient, expeditious mechanism for resolving federal labor-management disputes, it fails to resolve the issue of whether excepted-to arbitration awards are final.

### C. *Agency Construction*

Far more illuminating than that history is the longstanding construction of section 7122(b) by the FLRA, the agency charged with administering the statute. Virtually from the day the statute was enacted until this day,[24] the FLRA has had on the books

---

**18.** At least until most recently, the Authority itself must have been of the same view. See Part C *infra.*

**19.** H.R. 11280, 95th Cong., 2d Sess. (1977), reprinted in Subcomm. on Postal Personnel and Modernization, House Comm. on Post Office and Civil Service, *Legislative History of the Federal Service Labor-Management Relations Statute, Title VII of the Civil Service Reform Act of 1978* (96th Cong., 1st Sess.) (hereinafter cited as "Legislative Hist."), at 967 *et seq.*

**20.** See Legislative Hist. at 978–79 (H.R. 11280 as passed), 421–22 (bill as reported out of committee).

**21.** Committee Report at 56–57, Legislative Hist. at 702–03.

**22.** H.Rep. No. 95–1717 (1978) at 158, Legislative Hist. at 826.

**23.** *Id.*

**24.** The regulation was first promulgated in 1980, 45 Fed.Reg. 3486 (Jan. 17, 1980), continuing in effect interim regulations of like import promulgated shortly after the passage of the Civil Service Reform Act. See 44 Fed.Reg. 44740 *et seq.* (July 30, 1979). These stay regulations were similar to those in effect under the

a regulation which sets up an elaborate procedure for the seeking and granting of stays of arbitration decisions, and which further provides explicitly that the filing of an exception does not operate as a stay of such a decision—that only a stay granted by the FLRA can have that effect.[25] It is necessarily the implicit premise underlying these regulations that in the opinion of the FLRA the statute requires an unsuccessful party to the arbitration process to secure a stay to avoid being bound, then and there, by an arbitration decision, or, at a minimum, that the statute permits the Authority to require a successful application for a stay as a prerequisite to noncompliance with an arbitral award.[26]

Where, as here, the legislative intent is not otherwise plain, we are obligated to accord substantial deference to the FLRA's consistent construction of its organic statute. See *National Labor Relations Board v. Bell Aerospace Co.*, 416 U.S. 267, 274–75, 94 S.Ct. 1757, 1761–62, 40 L.Ed.2d 134 (1974); cf. *National Treasury Employees' Union v. FLRA*, 712 F.2d 669, 673 (D.C.Cir.1983). Thus, absent any substantial grounds for concluding that the FLRA's longstanding regulation violates section 7122(b), adherence to this principle compels the conclusion that under the statute, as properly interpreted, arbitral awards which have not been stayed are final and binding, or, at a minimum, that the question whether such awards are final is an open one under the statute, to be determined as a matter of policy by the Authority. But the statute clearly cannot be read to provide that the FLRA is prohib-

ited from considering arbitral awards to be final and binding.

### III

As indicated by its decision in this case, the FLRA appears [27] now to have reinterpreted section 7122(b) to mean that arbitration awards are not final, and hence not binding on the government agencies to which they are directed, if exceptions have been filed. In support of this new interpretation, the FLRA contends before this court that its previous construction is inconsistent with the underlying statutory purpose. In the Authority's present view, if arbitral awards were treated as final under section 7122(b), the exceptions procedure would be rendered virtually useless because a government agency would have to comply with an arbitration award against it during the period in which the exceptions are pending even though the award was ultimately overturned by the FLRA. Thus, it is said, Title VII's careful balancing of federal agency management and employee interests would be undone and the procedures skewed in favor of the employees.

These newly-perceived objections to the Authority's traditional construction of section 7122(b) are not compelling. As the FLRA must have recognized when it promulgated the stay procedures in the first place, the availability of a stay order constitutes a simple means for preventing governmental agencies from being forced to comply with arbitration awards while exceptions are pending if the award is both burdensome and of doubtful validity. Prompt FLRA resolution of stay requests [28]—which under the FLRA regula-

---

pre-CSRA system, see 5 C.F.R. § 2411.47 (1978). Congress may be deemed to have been aware of the existing regulatory scheme when it enacted the CSRA legislation establishing the section 7122 arbitration award review procedure.

**25.** See note 4, *supra.*

**26.** If the filing of exceptions to arbitrators' awards with the FLRA rendered such awards non-final and binding within the meaning of the statute, the FLRA's stay provisions would, of course, have been both superfluous and beyond the agency's statutory authority.

**27.** As discussed elsewhere, the stay regulation is still in force and has not to date been repealed or replaced by a different regulation.

**28.** We note that, although the FLRA's history of deciding stay applications does not reflect the desired expedition, it is currently subject to a district court order requiring the prompt resolution of stay petitions. See *American Federation of Governmental Employees v. FLRA, supra* note 9.

tions are decided on essentially the same grounds as requests for stays of federal district court orders pending appeal [29] —will prevent government agencies from suffering prejudice from being forced to comply with improper arbitration awards, and it will at the same time maintain the congressionally-mandated balance of management and labor interests incorporated in the CSRA.

On the other hand, the FLRA's new construction of the statute could well result in a skewing of the congressionally-mandated balance in the opposite direction. Reading section 7122(b) to provide that the mere filing of exceptions automatically stays compliance with arbitration awards pending the resolution of the exceptions would, of course, have the effect of unnecessarily delaying compliance with a proper award, thus severely prejudicing aggrieved employees.[30] Such a result is particularly undesirable in view of the fact that in nearly ninety percent of the cases in which exceptions to arbitration awards were filed, the FLRA ultimately has dismissed the exceptions and upheld the award,[31] just as it did in this case.[32]

Notwithstanding these considerations, we do not hold that the FLRA is affirmatively required by the statute to construe and administer that law to effectuate these purposes, but only that a construction consistent with their effectuation and with the Authority's own stay regulations is not prohibited by section 7122(b).

## IV

Finally, we must consider whether the Authority's decision in the instant case, which of course is inconsistent with the existing FLRA regulations, can be sustained by this court. We conclude that the answer must be in the negative.

In his decision recommending that the unfair labor practice complaint be dismissed, the ALJ explicitly relied on the FLRA's explanation accompanying its November, 1981 notice of proposed rulemaking. There the Authority explained [33] that it was seeking to revise the 5 C.F.R. § 2429.8 stay regulation because it believed that a rule providing that the filing of exceptions automatically stayed arbitral awards better complied with the statute.[34] Although the ALJ correctly noted that the FLRA ultimately withdrew its proposed revision of the stay regulation,[35] he concluded that, since the Authority had not also expressly repudiated the interpretation of the statute set forth in the proposed rule revision, that interpretation governed. The FLRA, as noted, affirmed the ALJ's decision and found that no error had been committed.

These administrative actions cannot withstand even the relatively deferential scrutiny mandated under the arbitrary, capricious, and abuse of discretion standard, if only because acceptance of the FLRA's justification of its decision would be inconsist-

---

**29.** Compare 5 C.F.R. § 2429.8(c), *supra* note 4, with *Washington Metropolitan Area Transit Commission v. Holiday Tours,* 559 F.2d 841, 842–43 (D.C.Cir.1977).

**30.** For example, a discharged employee such as the one in this case, who was awarded reinstatement and backpay in arbitration, would suffer severe financial and other harm if his receipt of the award was automatically delayed during the exception review period, which can last many months.

**31.** See *AFGE v. FLRA, supra* note 9, 593 F.Supp. at 1205 note 4.

**32.** Beyond that, the FLRA's new construction of section 7122(b) is likely to have the effect of encouraging agencies to delay compliance with valid arbitral awards by filing frivolous excep-

tions, thereby frustrating the congressional purpose that arbitration simply and quickly resolve federal labor-management disputes.

**33.** The FLRA notice of proposed rulemaking, published at 46 Fed.Reg. 57056 (1981), would have revised 5 C.F.R. § 2429.8 to provide that "[t]he filing of an exception to an arbitrator's award under Part 2425 of this subchapter shall operate as a stay of the award. Such stay shall be deemed effective from the date of the award and shall remain in effect until the Authority resolves the exception." *Id.*

**34.** 46 Fed.Reg. 57056 (1981).

**35.** 47 Fed.Reg. 38133 (1982).

ent with fundamental principles of administrative procedure.

Although administrative agencies are not subject to a requirement of absolute consistency, compliance with a reasonable level of consistency clearly is required in a variety of contexts. For example, administrative agencies are generally "under an obligation to follow their own regulations, procedures and precedents." *National Conservative Political Action Committee v. Federal Election Committee*, 626 F.2d 953, 959 (D.C.Cir.1980); see also, *United States v. Nixon*, 418 U.S. 683, 694–96, 94 S.Ct. 3090, 3100–02, 41 L.Ed.2d 1039 (1974); *Lucas v. Hodges*, 730 F.2d 1493, 1504 n. 20 (D.C.Cir.1984). See generally, 2 K Davis, *Administrative Law Treatise*, § 7:21 at 98–99 (1979). Similarly, an agency seeking to repeal or modify a legislative rule promulgated by means of notice and comment rulemaking is obligated to undertake similar procedures to accomplish such modification or repeal, see *Action on Smoking and Health v. Civil Aeronautics Board*, 713 F.2d 795, 798–801 (D.C.Cir.1983), and to provide a reasoned explanation for the change addressing with some precision any concerns voiced in the comments received. *Id.* at 798 note 2. See also, *Action on Smoking and Health v. Civil Aeronautics Board*, 699 F.2d 1209, 1216, 1218 (D.C.Cir. 1983). Thus, unless and until it amends or repeals a valid legislative rule or regulation, an agency is bound by such a rule or regulation. See *United States v. Nixon, supra; Davis, supra.*

These fundamental principles would be vitiated if an agency could validly justify an adjudication on the ground that longstanding interpretation of the organic statute as reflected in validly adopted, existing legislative rules was erroneous. Similarly, an adjudication which violates such rules cannot be defended on the basis of an explanation accompanying a *proposed* rules change, a change, moreover, which was subsequently withdrawn. Were the Authority's approach proper, administrative agencies could effectively repeal legislative rules and abandon longstanding interpretations of statutes indirectly, by adjudication, without providing affected parties any opportunity to comment on the proposed changes, and without providing any significant explanation for their departure from their established views.

Indeed, this is precisely what happened in this case. The FLRA issued a brief opinion affirming the ALJ's unpublished decision and providing *no discussion whatever* of the significance of the Authority's long-standing stay regulation. Since that time, the Authority has apparently cited its opinion in this case in orders denying stay requests, implicitly inviting agencies not to comply with arbitration awards [36] even though the agency has not rescinded or modified the existing stay regulation.[37] In short, the Authority has effectively emasculated its own regulation by means of a brief, summary opinion that fails even to mention the significance of the long-standing stay regulation, much less to provide a coherent justification of the Authority's abandonment of the statutory interpretation embodied in that regulation.

The FLRA's decision in this case does not qualify as reasoned decisionmaking. The FLRA is entitled to seek to alter its established regulation and interpretation of section 7122(b), which, as we have noted,[38] is sufficiently ambiguous to permit both the FLRA's traditional construction and its newly advanced one. But if it wishes to do so, the Authority will have to proceed openly and directly, by following established rulemaking procedures, rather than indirectly by means of an adjudication that ignores its own rules and precedents. Accordingly, the FLRA's order is vacated and

---

**36.** See Petitioner's Brief at 24.

**37.** The Authority appears to recognize that it is required to amend or repeal the existing stay regulation by a new rulemaking, for it has recently initiated such proceedings based on the construction of section 7122 established in the decision under review here. See 49 Fed.Reg. 44902 (Nov. 13, 1984).

**38.** *See supra,* p. 18.

the case is remanded for further proceedings consistent with this opinion.

*So Ordered*

SCALIA, Circuit Judge, concurring:

I concur with the court's disposition, and write separately only to note that our holding does not hinge upon the lawfulness of the agency's stay regulations.

In my view, the statutory provision that an arbitrator's award "shall be final and binding" "[i]f no exception ... is filed [within thirty days]" clearly implies that the award will not be final and binding if an exception is filed within that period. The FLRA regulations based upon the contrary assumption seem to me to fall into the category of improving upon the statute rather than applying it. It is unnecessary to decide, however, whether those regulations would be sustainable as representing a contemporaneous and longstanding agency interpretation that is barely permissible under the language of the statute. For even if they turn out to be invalid, that invalidity has not yet been pronounced by any court. They remain effective, and thus remain an authoritative agency expression of the interpretation of law that underlies them. That being so, an agency adjudication inconsistent with that interpretation of law cannot normally stand.

I do not think it to be true, as counsel for the FLRA was in effect urging, that an agency is free to take inconsistent positions so long as one of the two is unlawful. It is the agency's responsibility to behave in a rational (and hence reasonably consistent) fashion; and the wrong of inconsistency is not righted by the further wrong that one of the inconsistencies is in addition unlawful. The agency could of course be upheld in the present case if the adjudication had the effect of eliminating the prior pronouncement instead of conflicting with it. But while an adjudication can overrule an earlier adjudication, the Administrative Procedure Act clearly provides that a rule can only be repealed by rulemaking. 5 U.S.C. §§ 551(5), 553 (1982). *See, e.g., Consumer Energy Council of America v.*

*FERC*, 673 F.2d 425, 445–46 (D.C.Cir.1982), *aff'd mem.*, 463 U.S. 1216, 103 S.Ct. 3556, 77 L.Ed.2d 1402 (1983).

Perhaps there are situations in which we would be justified in looking beyond the defect of inconsistency, to affirm an adjudication on the ground that its result was mandated by statute and that the conflicting rule was simply unlawful. But that is surely not the ordinary course, since it fosters neither judicial efficiency nor orderly and predictable agency process. There are no special circumstances to justify a departure from the ordinary course here. Indeed, the agency's abandonment of the rulemaking originally designed to conform its regulations to what it now says are the requirements of the statute makes it particularly appropriate that we insist upon orderly administration and decline to be accomplices in an obviously unnecessary rescission of a rule through adjudication rather than rulemaking.