**NATIONAL FEDERATION OF FEDERAL EMPLOYEES, LOCAL 1669, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

No. 83–2228.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 24, 1984.

Decided Oct. 12, 1984.

---

Clinton D. Wolcott, Washington, D.C., with whom Catherine Waelder, Washington, D.C., was on the brief, for petitioner. H. Stephan Gordon, Washington, D.C., entered an appearance for petitioner.

William R. Tobey, Atty., Federal Labor Relations Authority, Washington, D.C., with whom Ruth E. Peters, Sol., and Stephen H. Svartz, Deputy Sol., Federal Labor Relations Authority, Washington, D.C., were on the brief, for respondent.

Before WRIGHT and WALD, Circuit Judges, and MacKINNON, Senior Circuit Judge.

Opinion for the court filed by Circuit Judge J. SKELLY WRIGHT.

J. SKELLY WRIGHT, Circuit Judge:

The National Federation of Federal Employees (NFFE), Local 1669, challenges a Federal Labor Relations Authority (FLRA) determination that a congressional conference report represents "outside authority * * * essentially nondiscretionary in nature." 5 C.F.R. § 2424.11 (1984). Such an FLRA determination renders a subject non-negotiable. Because we find that the agency's decision was not arbitrary or capricious, we affirm.

## I. BACKGROUND

### A. *The Legal Framework*

In 1978 Congress thoroughly restructured federal labor relations and passed the Civil Service Reform Act. 5 U.S.C. § 7101 *et seq.* (1982). Title VII created a structure for collective bargaining between the federal government and representatives of federal civilian employees; it also created a Federal Labor Relations Authority to administer the new federal labor relations regime. "The new Act * * * significantly strengthened the position of public employee unions while carefully preserving the ability of federal managers to maintain 'an effective and efficient Government.' " *Bureau of Alcohol, Tobacco & Firearms v. FLRA,* — U.S. —, —, 104 S.Ct. 439, 441, 78 L.Ed.2d 195 (1983) (*quoting* 5 U.S.C. § 7101(b)).

The Act requires that federal employers engage in collective bargaining "with respect to the conditions of employment." 5 U.S.C. §§ 7103(a)(12), 7114(a)(4). The statute includes certain exceptions to this duty of collective bargaining for conditions of employment, including the "compelling need" exception. Congress provided that "[t]he duty to bargain in good faith * * * extend[s] to matters which are the subject of any agency rule or regulation * * * only

if [FLRA] has determined * * * that no compelling need (as determined under regulations prescribed by the Authority) exists for the rule or regulation." 5 U.S.C. § 7117(a)(2).

In 1980 FLRA promulgated a regulation setting forth three "illustrative criteria" for determining compelling need. The third criterion is relevant for this appeal: a rule or regulation serves a "compelling need" and is nonnegotiable if it "implements a mandate to the agency * * * under law or other outside authority, which implementation is essentially nondiscretionary in nature." 5 C.F.R. § 2424.11.

B. *The Negotiability Dispute*

NFFE Local 1669 represents technicians in the Arkansas National Guard. Technicians have a dual status—civilian and military.[1] Like most other federal employees, technicians have the collective bargaining rights delineated in the Civil Service Reform Act. *See New Jersey Air Nat'l Guard v. FLRA,* 677 F.2d 276, 281 (3d Cir.1982), *cert. denied,* 459 U.S. 988, 103 S.Ct. 343, 74 L.Ed.2d 384 (1982).

In September 1981 negotiations between NFFE and the Arkansas Guard were proceeding. The union proposed that technicians be quartered as civilians when they travel, rather than as military personnel. The Guard claimed that its regulation requiring the technicians to be quartered as military personnel was nonnegotiable. The union appealed to FLRA for a negotiability review.

On November 18, 1981, while the matter was pending before FLRA, the House Appropriations Committee directed in its report accompanying the fiscal year 1982 Department of Defense appropriations bill that National Guard "military technicians * * * occupy government quarters based on military grade when in a travel status." H.R.Rep. No. 97–333, 97th Cong., 1st Sess. 42 (1981). The appropriations bill became law on December 29, 1981, Pub.L. No. 97–

114, 97th Cong., 1st Sess., 95 STAT. 1565 (1981), and the conference report stated that any provision in either chamber's report to which the other chamber did not object was incorporated into the conference report; the Senate was silent on the technician quartering language. H.R.Rep. No. 97–40, 97th Cong., 1st Sess. 9 (1981).

On April 29, 1982 the Guard filed a supplemental submission before FLRA, now arguing that the report language created a "compelling need" for the regulation because the language was "a mandate * * * essentially nondiscretionary in nature." Letter dated April 29, 1982 from Bernard W. Hurlock, Chief, Office of Technician Personnel, National Guard Bureau, Departments of Army and Air Force, to Ronald W. Haughton, Chairman, FLRA, at 3, Appendix (App.) 32. The union responded, in relevant part, that congressional reports do not have the force of law, and that substantive legislation in an appropriations bill is prohibited. Letter dated June 23, 1982 from James M. Peirce, President, NFFE, to Ronald W. Haughton, Chairman, FLRA, at 7, App. 56.

On September 29, 1983 FLRA concluded that the proposal was nonnegotiable because "the Agency was placed under a mandate from Congress requiring that technicians be assigned government quarters based on military grade as contrasted to civilian grade when in travel status." Decision and Order on Negotiability Issues, FLRA Case No. O–NG–575, issued September 29, 1983, at 3 (*Decision*), App. 71. FLRA thus determined that the Guard had established a compelling need.

The union filed a timely appeal to this court.

## II. ANALYSIS

A. *Standard of Review*

The Civil Service Reform Act provides that the standard of review for FLRA deci-

---

**1.** The status of National Guard technicians is defined in the National Guard Technician Act,

32 U.S.C. § 709 (1982).

sions is the familiar Administrative Procedure Act evaluation. Thus the agency decision may be set aside if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706 (1982), *incorporated by* 5 U.S.C. § 7123(c). Like any agency interpreting its regulations, FLRA is entitled to considerable, but not unbounded, deference when it exercises regulatory discretion under its organic statute. *Bureau of Alcohol, Tobacco & Firearms v. FLRA, supra,* —— U.S. at ——, 104 S.Ct. at 444.

NFFE argues that a less deferential standard should apply. It contends that FLRA was construing the Department of Defense appropriations bill and that the presumption of deference does not extend to the interpretation of any statutes other than the agency's organic statute. *See U.S. Dep't of Justice v. FLRA,* 709 F.2d 724, 729 n. 21 (D.C.Cir.1983). NFFE's argument turns on whether FLRA analyzed the conference report as "law" or as "outside authority." If the former, the agency is not entitled to deference even though it is reaching the judgment under its "illustrative criteria." *See American Federation of Government Employees v. FLRA,* 730 F.2d 1534, 1538 (D.C.Cir.1984). If the latter, FLRA's determination receives the deference due an exercise of administrative discretion. Although FLRA's decision is far from being a model of clarity, it contains sufficient support for FLRA's argument that it reviewed the conference report as "outside authority" rather than "law." *See Decision* at 3 n. 6, App. 71 (emphasizing "outside authority" language in the regulatory criterion); *id.* at 3 (referring to "mandate from Congress" rather than "law"). *See also Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.,* 419 U.S. 281, 286, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974) (court "will uphold a decision of less than ideal clarity if

the agency's path may reasonably be discerned").

Thus the issue is whether FLRA's determination that a provision in a conference report constituted "outside authority * * * essentially nondiscretionary in nature" was arbitrary or capricious.[2]

## B. *The Effect of the Conference Report*

■ The FLRA determination is not "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Manufacturers' Ass'n v. State Farm Mutual Automobile Ins. Co.,* 463 U.S. 29, ——, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983). It was within FLRA's discretion to conclude that the conference report imposed a nondiscretionary mandate on the Guard *within the context of the federal labor relations regime.* Indeed, if FLRA had found otherwise it would have required the Guard to risk defying the instruction in the conference report through collective bargaining. We cannot say that it was arbitrary or capricious to find such a provision within the "compelling need" exception that Congress specifically charged FLRA with charting.

■ We note, however, that we are troubled by FLRA's manner of exercising its regulatory discretion. FLRA's brief, conclusory opinion comes close to failing to survive a test of reasoned decisionmaking. It is a long-established principle of administrative law that the agency must explain its reasons in its decision, rather than in counsel's *post hoc* rationalizations. *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 245, 9 L.Ed.2d 207 (1962). The FLRA decision reveals little of its reasons, and *nothing* about the contours of the "outside authority" exception. At oral argument FLRA counsel frankly conceded that the agency had not

---

**2.** Since the question is not whether the conference report constituted law, NFFE's formidable arguments that substantive law is ordinarily unchanged by appropriations bills, *see Tennessee Valley Authority v. Hill,* 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978), and that Congress

may not legislate through committee reports, *see Immigration & Naturalization Service v. Chadha,* 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983); *In Re Evans,* 452 F.2d 1239, 1245 (D.C.Cir.), *cert. denied,* 408 U.S. 930, 92 S.Ct. 2479, 33 L.Ed.2d 342 (1971), are inapposite.

yet defined the boundaries of this exception. Mindful that "Congress intended the bargaining obligation to be construed broadly," *Library of Congress v. FLRA,* 699 F.2d 1280, 1286 (D.C.Cir.1983), we would expect FLRA to approach its delineation of exceptions to that obligation with greater rigor than its decision reveals.

We therefore limit our affirmance to the facts of this case. We note that the "outside authority" was an expression by the Appropriations Committees of both Houses, and that it accompanied a bill that passed the Congress. Without further explication by FLRA of its "outside authority" standard, however, we would be most reluctant to approve similar conclusory declarations of "outside authority."

■ We also find FLRA's lack of timeliness extremely disturbing. It took 15 months for the agency to issue a brief decision essentially saying that Congress had foreclosed the issue. "Negotiability disputes necessarily interrupt the normal process of collective bargaining," *Nat'l Federation of Federal Employees, Local 1167 v. FLRA,* 681 F.2d 886, 889 (D.C.Cir. 1982), and the agency's delay undermines the federal labor relations system it is charged with administering. *See* H. ROBINSON, NEGOTIABILITY IN THE FEDERAL SECTOR 188 n. 15 (1981). We trust that FLRA will recognize the importance of rendering its negotiability decisions in a more timely fashion.

### III. CONCLUSION

Because we find that FLRA's determination that the conference report provided "outside authority * * * essentially nondiscretionary in nature" was not arbitrary or capricious, we affirm the FLRA decision.

*So ordered.*