FEDERAL LABOR RELATIONS
AUTHORITY, Petitioner,

v.

OFFICE OF PERSONNEL MANAGE-
MENT, WASHINGTON, D.C.,
Respondent,

Local 32, AFGE, AFL–CIO, Intervenor.

No. 84–1325.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 22, 1985.

Decided Dec. 13, 1985.

Ruth E. Peters, Sol., Federal Labor Relations Authority, with whom Steven H. Svartz, Deputy Sol., William E. Persina, Associate Sol., and Pamela P. Johnson, Atty., Federal Labor Relations Authority,

**56.** *See United States v. Munsingwear, Inc.,* 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950).

Washington, D.C., were on brief, for petitioner.

Phillip R. Kete, Washington, D.C., for intervenor, Local 32, AFGE, AFL–CIO.

Joseph A. Morris, Gen. Counsel, Office of Personnel Management, Washington, D.C., for respondent. Daniel R. Levinson, Atty., Office of Personnel Management, Washington, D.C., also entered an appearance, for respondent.

Before ROBINSON, Chief Judge, EDWARDS and SCALIA, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge.

Under Title VII of the Civil Service Reform Act of 1978, when an agency declares a union collective-bargaining proposal non-negotiable, the union may appeal this declaration to the Federal Labor Relations Authority ("FLRA") in an expedited negotiability appeal. In late 1979, the Office of Personnel Management ("OPM"), a federal agency, asserted that eight proposals made by the American Federation of Government Employees, AFL–CIO, Local 32 ("the Union") were non-negotiable. In February 1980, the Union filed a timely negotiability appeal with the FLRA. On February 6, 1984, after four years of deliberation, the FLRA rendered its decision ordering OPM to negotiate on four of the eight proposals at the Union's behest. Although the Union subsequently made repeated requests to bargain over these proposals, OPM refused and, at the Union's request, the FLRA sought enforcement of its order in this court.

OPM now advances the rather extraordinary argument that, because the collective bargaining agreement relevant to the original proposals had expired on June 19, 1983, the Union's negotiability appeal is moot, and the FLRA order is therefore without legal effect. We can find no support whatsoever, either in law or logic, for this strained construction of the duty to bargain. Because we conclude that under clearly established principles of labor law an order to negotiate is binding on an agency without regard to the expiration of a particular collective bargaining agreement, we hold that the FLRA negotiation order should be enforced.

## I. BACKGROUND

Under Title VII of the Civil Service Reform Act of 1978, federal agencies have a continuous duty to bargain in good faith with exclusive bargaining representatives.[1] Not all issues, however, are negotiable. Indeed, the scope of collective bargaining is far narrower in the federal sector than in the private sector.[2] Collective bargaining is defined in terms of negotiations over "conditions of employment,"[3] which include "personnel policies, practices, and matters, whether established by rule, regulation, or otherwise, affecting working conditions...."[4] An agency, however, has no obligation to bargain with a union over certain management rights.[5]

If an agency asserts that a union proposal is non-negotiable, the employees' bargaining agent may file either an unfair labor practice charge against the agency for failure to negotiate in good faith,[6] or appeal the non-negotiability declaration in an expedited negotiability appeal.[7] The negotiability appeal procedure is clearly in-

---

**1.** In pertinent part the Act provides:

Any agency and any exclusive representative in any appropriate unit in the agency, through appropriate representatives, shall meet and negotiate in good faith for the purposes of arriving at a collective bargaining agreement.

5 U.S.C. § 7114(a)(4) (1982).

**2.** H. ROBINSON, NEGOTIABILITY IN THE FEDERAL SECTOR 189 (1981).

**3.** 5 U.S.C. § 7103(a)(12) (1982).

**4.** 5 U.S.C. § 7103(a)(14) (1982).

**5.** *See, e.g., Department of Defense v. FLRA,* 659 F.2d 1140 (D.C.Cir.1981), *cert. denied,* 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982).

**6.** 5 U.S.C. § 7118 (1982).

**7.** 5 U.S.C. § 7117(c) (1982).

tended to provide a speedy *alternative* to the traditional unfair labor practice procedures.[8] The appeal procedure was conceived of as a simple process, designed to resolve mostly straight-forward legal questions focused on the negotiability of specific bargaining proposals. Because it is unnecessary to have a full blown "trial" in a negotiability appeal, it was assumed that the FLRA would give bargaining parties prompt answers to bargaining disputes. Once a particular proposal is found to be negotiable, the FLRA is authorized to seek enforcement in court to compel compliance with its bargaining orders.[9] Ideally, the expedited procedure is supposed to resolve bargaining disputes in a timely and efficient manner, so as to minimize disruptions in collective bargaining. Unfortunately, as in the instant appeal, the expedited procedure is often a sham due to long delays in FLRA case processing.

The problem of long delays in the expedited procedure is compounded by an FLRA regulation *requiring* unions to use the negotiability appeal process in all cases in which an agency declares a proposal non-negotiable. In other words, under current FLRA regulations, a union may elect to use the traditional unfair labor practice procedures to challenge improper agency unilateral actions and other such refusals to bargain, but it is required to use the so-called expedited procedure in cases, such as this one, involving agency declarations

that a bargaining proposal is non-negotiable.[10] Although this court need not address the issue in this case, there are potentially serious problems with this regulation if it is applied to a case in which an agency's refusal to bargain may merit retroactive relief.[11]

This case involves the Union's attempt to secure an expedited negotiability decision from the FLRA on eight Union proposals. After two years of unsuccessful negotiations between OPM and the Union, the Federal Service Impasses Panel resolved a bargaining impasse and imposed a three-year contract on the Union and OPM effective June 20, 1980. Because OPM had declared eight Union proposals non-negotiable, however, the Impasses Panel omitted them from consideration. The Union therefore filed a negotiability appeal with the FLRA in order to force OPM to bargain over these. remaining contract proposals.

Four years after the Union filed its negotiability appeal and seven months after the collective bargaining agreement between OPM and the Union had expired, the FLRA issued a decision ordering OPM to bargain with the Union on four proposals.[12] Beginning in early March, 1984, the Union made repeated requests to bargain with OPM, but was rebuffed with claims that OPM officials were not then available to bargain. Finally, on April 4, 1984, OPM informed the Union that despite the FLRA order it

---

**8.** Representative Udall proposed the expedited negotiability procedure as a substitute for the procedure in an earlier version of the Act that would have processed all negotiability disputes through the unfair labor practice procedure. *See* 124 Cong.Rec. 29174–29182 (1978). "Accepting the Udall substitute, Congress expressed its intention that negotiability disputes not be subject to the cumbersome unfair labor practice procedures, but be resolved through the streamlined section 7117(c) process." *American Federation of Government Employees, AFL–CIO, Local 2736 v. FLRA,* 715 F.2d 627, 630 (D.C.Cir.1983).

**9.** 5 U.S.C. § 7123(b) (1982). *See Defense Language Institute v. FLRA,* 767 F.2d 1398, 1399 n. 1 (9th Cir.1985) ("This court has jurisdiction over ... the Authority's cross-petition for enforcement [of a negotiability order] under 5 U.S.C. § 7123(a)–(b)."), *petition for cert. filed,* 54 U.S.

L.W. 3346 (U.S. Nov. 19, 1985) (No. 85–777); *EEOC v. FLRA,* 744 F.2d 842, 847 & n. 10 (D.C. Cir.1984) (enforcing negotiability order upon cross-petition for enforcement by the FLRA), *cert. granted on other issue,* —— U.S. ——, 105 S.Ct. 3497, 87 L.Ed.2d 629 (1985).

**10.** 5 C.F.R. § 2423.5 (1985).

**11.** *Compare* 5 U.S.C. § 7117(c) (relief limited to prospective order requiring agency to bargain at request of union) *with* 5 U.S.C. § 7118(a)(7) (relief includes giving renegotiated agreement retroactive effect).

**12.** The decision ordered for each proposal:

It Is Ordered that the Agency shall upon request (or as otherwise agreed to by the parties) bargain concerning the proposal.

would not negotiate with the Union over these proposals:

> The Office of General Counsel has reviewed FLRA's advice in ONG 255 (14 FLRA 2) and advises us that it is without legal effect. There is no obligation to bargain on the issues it discusses. Therefore we will not bargain on these issues.

OPM offered no other explanation for its refusal to bargain and made no effort to give reasons for the assertion that the proposals were non-negotiable.

OPM has now advanced the extraordinary argument that the Union's negotiability appeal became moot when the collective bargaining agreement for which the proposals were initially made expired.[13] According to OPM, negotiability decisions must take account of the particular "bargaining context" in which the proposals arose, the implication being that the negotiability of a proposal will vary depending upon its "bargaining context." OPM notes that the proposals at issue in this case arose during bargaining over the collective bargaining agreement that expired in June 1983, and argues that when that agreement expired, the dispute over the negotiability of the proposals became moot.[14]

Upon the Union's request that the FLRA obtain judicial enforcement of the order,

the FLRA filed the present application for enforcement.

## II. ANALYSIS

The task of the FLRA in resolving negotiability appeals is to "measure[ ]" specific and delimited bargaining proposals "against applicable law, rules or regulations in order to determine whether a given proposal is within the duty to bargain."[15] The particular bargaining context of a proposal is not at issue in a negotiability appeal. The OPM does not cite, and we could not find, a single example of a FLRA negotiability decision whose resolution was based in whole or in part on the "bargaining context." Instead, the meaning of the union proposal and its consistency with applicable law is the sole focus of the negotiability decision.[16] The irrelevance of the bargaining context in negotiability determinations is exemplified by the fact that, under clear and longstanding FLRA precedent, a negotiability order is binding on *all* federal agencies faced with the same union proposal. Once the FLRA holds that a proposal is negotiable, it is an unfair labor practice for another agency to refuse to negotiate on that proposal at a time when the proposal is properly subject to collective bargaining.[17]

---

13. This mootness argument was not raised by OPM until after the parties' 1980 agreement had expired.

14. OPM's Brief, at 12. ("[T]he FLRA's authority to issue a legally binding decision and order came to an end when the context of the dispute ceased to exist; that is, the collective bargaining agreement itself.") OPM does not challenge the specific FLRA decisions on the four Union proposals. Its sole challenge is to the FLRA's authority to issue a binding bargaining order.

15. Chester, *Negotiations, Scope of Bargaining and Resolution of Negotiability Disputes* in LABOR-MANAGEMENT RELATIONS, CIVIL SERVICE REFORMS, AND EEO IN THE FEDERAL SERVICE 43, 49 (Federal Bar Ass'n 1980); *see also* H. ROBINSON, *supra* note 2, at 39–40.

16. It is telling that none of the major authorities on labor law attribute any significance to the "bargaining context" in delimiting the scope of the bargaining obligation, as distinguished from

a waiver of the duty to bargain. *See, e.g.,* B. MELTZER & S. HENDERSON, LABOR LAW 851–893 (3d ed. 1985); H. EDWARDS, R. CLARK & C. CRAVER, LABOR RELATIONS LAW IN THE PUBLIC SECTOR 293–407 (3d ed. 1985); 1 THE DEVELOPING LABOR LAW 757–865 (C. Morris 2d ed. 1983); C. SUMMERS, H. WELLINGTON & A. HYDE, CASES AND MATERIALS ON LABOR LAW 711–745 (2d ed. 1982); H. ROBINSON, *supra* note 2; R. SMITH, L. MERRIFIELD & T. ST. ANTOINE, LABOR RELATIONS LAW 552–575 (6th ed. 1979); A. COX, D. BOK & R. GORMAN, CASES AND MATERIALS ON LABOR LAW 474–531 (8th ed. 1977); R. GORMAN, BASIC TEXT ON LABOR LAW 496–531 (1976).

17. *Department of the Air Force, U.S. Air Force Academy,* 6 F.L.R.A. 548, 549 (1981), *enforced,* 717 F.2d 1314, 1315 (10th Cir.1983) ("The union proposal at issue is virtually identical to proposals which the Authority previously determined to be negotiable and which have been sustained by two other circuits."); *see also, e.g., Department of Treasury, Internal Revenue Service, Memphis Service Center,* 15 F.L.R.A. 829, 830

Given these well-established principles, OPM's argument that the validity of a negotiability order is tied to a particular bargaining context must be rejected. If a negotiability order is binding on non-party agencies involved in entirely different negotiations, surely it is binding in future negotiations involving the agency to which the order was originally directed. It is clear that, if adopted, OPM's mootness argument would produce absurd results: while all other agencies would be bound by a negotiability determination regardless of the life of any particular collective bargaining agreement, the agency to which a negotiability order was directed would be bound only for the life of one such agreement. The expiration of the agreement, however, should no more limit the obligations of the agency that was a party to the appeal, than it limits the obligations of all other federal agencies.[18]

Furthermore, at least under present circumstances with long case delays at the FLRA, the acceptance of OPM's theory would substantially erode employee bargaining rights. There is already a narrow scope of bargaining with federal agencies and these agencies can easily refuse to bargain over proposals that the FLRA ultimately holds negotiable. Long delays in the resolution of negotiability appeals already disrupt the union's right to bargain.[19] If negotiability appeals become moot once a collective bargaining agreement expires, the union's right to bargain would be rendered meaningless in many cases because negotiability appeals often extend beyond the term of an agreement, and because the FLRA recently has held that unions may not negotiate over new subjects *during the term of an agreement* absent a specific contract reopener.[20]

At bottom, we think that OPM's mootness theory illustrates a fundamental misconception of an agency's duty to bargain. OPM suggests that while a negotiability appeal is not mooted by the signing of a collective bargaining agreement, it is when such an agreement expires. However, as noted above, FLRA precedent is directly contrary. Under recent FLRA case law, it has been held that federal agencies have no obligation to bargain over

---

(1984); *Department of Treasury, Bureau of Alcohol, Tobacco & Firearms, Midwest Region, Chicago, Illinois*, 2 F.L.R.A. 573, 576 (1980). *Cf. NLRB v. Katz*, 369 U.S. 736, 743, 82 S.Ct. 1107, 1111, 8 L.Ed.2d 230 (1962) ("A refusal to negotiate *in fact* as to any subject which is within [the bargaining obligation], and about which the union seeks to negotiate" is a *per se* unfair labor practice.) (emphasis in original).

*See also* notes 23 & 24 and accompanying text, *infra* (discussing when a proposal is properly subject to collective bargaining).

18. Indeed, in one very early FLRA decision, the FLRA held that an agency's refusal to negotiate over a proposal constituted an unfair labor practice because that same proposal had previously been held negotiable in a proceeding to which the agency *was* a party. *Veterans Administration*, 1 F.L.R.A. 888, 891 (1979) ("As a result of the Council's decision to set aside the agency head's nonnegotiability determination the Respondent became obligated to negotiate on the subject proposal."). Under *Veterans Administration*, therefore, a negotiability appeal arising out of a "round of bargaining" would be binding on the agency for all subsequent "rounds of negotiation." OPM gives no reason why the expiration of a collective bargaining agreement should in any way eliminate this binding effect.

19. As this court once noted:
Negotiability disputes necessarily interrupt the normal process of collective bargaining. An agency's allegation that a union proposal falls outside of the public employer's duty to bargain at the very least prevents the union from negotiating over the proposed contract term. In addition, the parties may be unable to agree on other contract terms until the negotiability dispute is resolved and, as a consequence, a final collective bargaining agreement may be prevented entirely.
*National Federation of Federal Employees, Local 1167 v. FLRA*, 681 F.2d 886, 889 (D.C.Cir.1982). The true victims of the FLRA's extraordinary negotiability backlog, therefore, are not agencies, but rather unions, who are effectively foreclosed from bargaining over contract terms that are, in fact, negotiable. Such delay can seriously damage the union's collective bargaining efforts. *See* Weiler, *Striking A New Balance: Freedom of Contract and the Prospects for Union Representation*, 98 HARV.L.REV. 351, 361 & n. 31 (1984).

20. *Internal Revenue Service*, 19 F.L.R.A. 401 (1985).

union proposals initiated by a union during the term of a collective bargaining agreement.[21] The FLRA has even gone so far as to hold that, unless the parties have included a specific reopener provision in their contract, a union may not compel *mid-term* negotiations over a proposal specifically found bargainable in an expedited negotiability appeal.[22] While we express no view on the legality of this principle, we note this case law to highlight the fallacies in OPM's arguments in this case. Under *any* view of the prevailing law, an agency *is* obligated to bargain with the union on any negotiable proposal once a collective bargaining agreement expires.[23] The clearest case of non-mootness, therefore, is this one. There is no agreement, nor other form of waiver or changed circumstance,[24] eliminating the Union's right to bargain;

the Union has persistently demanded bargaining, and OPM has an undeniable obligation to bargain.

■ In summary, we hold that a union always may raise a negotiable issue—under the agency's continuing duty to bargain—absent some lawful waiver of the duty to bargain.[25] The statutory scheme would make no sense if its effect were to force the Union to use an expedited procedure for negotiability issues only to have the Union discover at the end of the process that the matter is entirely moot.

■ Finally, OPM's suggestion that the FLRA's long delay permits it to refuse to bargain has absolutely no merit. The Union has a right to bargain that in no way disappears because the FLRA fails to expe-

---

21. *See id.; Internal Revenue Service,* 17 F.L.R.A. 731 (1985). We recognize that this approach differs from that in the private sector, in which absent a union waiver, an employer has the duty to bargain with unions on union proposals during the term of an agreement. *See NLRB v. Acme Industrial Co.,* 385 U.S. 432, 436, 87 S.Ct. 565, 568, 17 L.Ed.2d 495 (1967) ("[T]he duty to bargain unquestionably extends beyond the period of contract negotiations and applies to labor-management relations during the term of an agreement."); 1 THE DEVELOPING LABOR LAW, *supra* note 16, at 672–76; R. GORMAN, *supra* note 16, at 455; *International Union, UAW v. NLRB,* 765 F.2d 175, 179 (D.C.Cir.1985); Edwards, *Deferral to Arbitration and Waiver of the Duty to Bargain: A Possible Way Out of Everlasting Confusion at the NLRB,* 46 OHIO ST.L.J. 23, 32 (1985). While some commentators believe that this approach should also be used in the federal sector, *see* H. ROBINSON, *supra* note 2, at 848–849, we need not decide whether the FLRA's distinction for the federal sector is correct. Under either the FLRA's approach or the private labor relations approach, there is no doubt that the duty to bargain does exist when the collective bargaining agreement expires.

22. *See Internal Revenue Service,* 19 F.L.R.A. 401 (1985); *Internal Revenue Service,* 17 F.L.R.A. 731, 737 (1985) ("Additionally, where parties have negotiated a reopener provision in their agreement, timely negotiable proposals submitted in connection and consistent therewith are subject to the mutual obligation to bargain."); *American Federation of Government Employees, AFL–CIO, Local 2494,* 7 F.L.R.A. 590, 590 n. 2 (1982) ("[T]he record shows that the agreement contains a reopening clause....

Furthermore, the record indicates that the parties contemplated an appeal of the issue involved in this case as well as subsequent negotiations in the event it might be found to be within the duty to bargain. Accordingly, the Agency's request that the Union's appeal be dismissed as moot is denied.").

23. The agency's right to refuse to bargain with a union on union-initiated proposals during the term of the collective bargaining agreement lasts only for the term of that agreement. *Internal Revenue Service,* 17 F.L.R.A. 731, 735–36. Hence, the FLRA's approach to midterm bargaining obligations creates what amounts to a statutory "zipper clause." *See* 1 THE DEVELOPING LABOR LAW, *supra* note 16, at 642–43, 674; R. GORMAN, *supra* note 16, at 471–72. As with any zipper clause, this statutory zipper clause loses its effect once the collective bargaining agreement expires. 1 THE DEVELOPING LABOR LAW, *supra* note 16, at 674 (zipper clauses relieve bargaining obligation for "duration of the contract"); R. GORMAN, *supra* note 16, at 471 (zipper clauses "close out bargaining during the contract term").

24. *See, e.g., International Ass'n of Fire Fighters,* 12 F.L.R.A. 712 (1983) (negotiability appeal mooted by change in exclusive representative); *Community Services Administration,* 7 F.L.R.A. 783 (1982) (arbitration appeal mooted by termination of agency).

25. As we have already noted, the FLRA presently construes a collective bargaining agreement *without a reopener clause* as one form of a waiver of the duty to bargain over negotiable subjects.

**850**

dite a negotiability appeal. This same suggestion was rejected out of hand by the Supreme Court twenty-three years ago in a case involving an employer's refusal to bargain under the National Labor Relations Act:

> The company urges that, because of the lapse of time between the occurrence of the unfair labor practices and the Board's final decision and order ... enforcement should be either denied altogether or conditioned on the holding of a new election to determine whether the union is still the employees' choice as bargaining representative. The argument has no merit.... Inordinate delay in any case is regrettable, but Congress has introduced no time limitation into the Act except that in § 10(b).[26]

### III. CONCLUSION

OPM's theory has no basis in law and exhibits a basic misunderstanding of the bargaining obligation in the federal sector. While the long delay in FLRA's resolution of the negotiability issues is indeed regrettable, it in no way justifies OPM's blatant refusal to bargain with the Union. We therefore grant FLRA's petition to enforce its negotiability order.

*So ordered.*

---

**26.** *NLRB v. Katz,* 369 U.S. 736, 748 n. 16, 82 S.Ct. 1107, 1114 n. 16, 8 L.Ed.2d 230 (1962). Furthermore, as noted at note 19, *supra,* it is the Union that has been the victim of this delay.

OPM has benefited from the delay because it has postponed its obligation to bargain over these negotiable proposals for four years.