### In re AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL–CIO, et al., Petitioners.

### No. 85–1363.

United States Court of Appeals, District of Columbia Circuit.

Argued April 9, 1986.

Decided May 6, 1986.

Charles A. Hobbie, with whom Mark D. Roth, Washington, D.C., was on brief, for petitioners.

Ruth E. Peters, Sol., with whom Steven H. Svartz, Deputy Sol., William E. Persina, Associate Sol., and Jill A. Griffin, Atty.,

Federal Labor Relations Authority, Washington, D.C., were on brief, for respondent.

Before GINSBURG, BORK and BUCKLEY, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge.

The Federal Labor Relations Authority (FLRA or Authority) was established by Congress in 1978 to administer the labor-management relations program in the federal sector. *See Bureau of Alcohol, Tobacco and Firearms v. FLRA,* 464 U.S. 89, 91–93, 104 S.Ct. 439, 441–42, 78 L.Ed.2d 195 (1983); *Department of Defense v. FLRA,* 659 F.2d 1140, 1144 (D.C.Cir.1981), *cert. denied,* 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982). The Authority processes four general categories of cases: unfair labor practice complaints; representation petitions; exceptions to arbitration awards; and negotiability appeals. With respect to the last category of cases—negotiability appeals—Congress has specifically instructed the FLRA to "expedite proceedings" and issue the Authority's written decision "at the earliest practicable date." 5 U.S.C. § 7117(c)(6) (1982).

The American Federation of Government Employees, AFL–CIO (AFGE), in the petition for mandamus pending before us, has charged the FLRA with unreasonable delay in processing negotiability and unfair labor practice appeals.[1] AFGE listed in its petition eleven negotiability appeals lodged before the Authority for periods extending 33 to 47 months, and six unfair labor practices cases pending 28 to 49 months.

Federal courts have come to recognize that "an agency's failure to implement or enforce a statutory scheme [with reasonable dispatch] can subvert the will of Congress as readily as can improper implementation." Garland, *Deregulation and Judicial Review,* 98 HARV.L.REV. 505, 567 (1985). When an agency's recalcitrance, inertia, laggard pace or inefficiency sorely disadvantages "the class of beneficiaries Congress intended to protect," *id.* at 562–63, judicial review, we have several times acknowledged, is in order. *See, e.g., Oil, Chemical & Atomic Workers International Union v. Zeeger,* 768 F.2d 1480 (D.C.Cir. 1985); *Air Line Pilots Association v. CAB,* 750 F.2d 81 (D.C.Cir.1984); *Telecommunications Research & Action Center v. FCC,* 750 F.2d 70 (D.C.Cir.1984) (TRAC). Our function in such cases is to assure the vitality of the congressional instruction that agencies conclude matters presented to them "within a reasonable time." 5 U.S.C. § 555(b); *see id.* § 706(1) (reviewing court's obligation to "compel agency action unlawfully withheld or unreasonably delayed").

The FLRA's past record of delay, as documented by AFGE, was indeed intolerable; factors we set out in TRAC indicated the propriety of a court direction to accelerate. *See TRAC,* 750 F.2d at 80. However, the FLRA's submissions in response to AFGE's petition satisfy us that the agency has determined to end its history of unjustifiable delay. It now appears that the Authority is proceeding successfully to achieve effective management and timely disposition of the cases Congress charged it with responsibility to decide. We therefore find it unnecessary, at this time, to issue a writ of mandamus ordering the Authority to quicken its pace. Should the FLRA falter in its commitment to achieve and maintain a reasonable case processing and decision schedule, AFGE may renew its petition and this court will entertain it on an expedited basis.

## I.

The FLRA operates in an area where relief, if it is to be effective, "must come

---

1. For a similar petition in the district court concerning FLRA delay in reviewing arbitration awards, see AFGE v. Frazier, No. 85–2046 (D.D.C. Feb. 7, 1986) [Available on WESTLAW, DCTU database]. Because the court of appeals serves as the first judicial forum in unfair labor practice and negotiability appeals cases, *see* 5 U.S.C. § 7123 (1982), AFGE properly lodged the instant petition here. *See* Telecommunications Research & Action Center v. FCC, 750 F.2d 70 (D.C.Cir.1984).

quickly." *See* Weiler, *Promises to Keep: Securing Workers' Rights to Self-Organization Under the NLRA,* 96 HARV.L.REV. 1769, 1793–94 (1983). Long delays in the adjudication of labor-management cases may indeed render decisions eventually issued, or relief ultimately awarded, "beside the point." *Id.* at 1794; *see also* Weiler, *Striking A New Balance: Freedom of Contract and the Prospects for Union Representation,* 98 HARV.L.REV. 351, 361 & n. 31 (1984). We have regularly deplored the age of the FLRA cases brought to this court for review. *See, e.g., FLRA v. Office of Personnel Management,* 778 F.2d 844, 846 (D.C.Cir.1985) ("the expedited [negotiability appeal] procedure is often a sham due to long delays in FLRA case processing"); *American Federation of Government Employees, AFL–CIO v. FLRA,* 778 F.2d 850, 866 (D.C.Cir.1985) (Ginsburg, J., dissenting) ("a decision by the Authority may be delayed some three years by the backlog from which that agency suffers"); *American Federation of Government Employees, AFL–CIO v. FLRA,* 777 F.2d 751, 753 n. 9 (D.C.Cir.1985) ("Long delays in Authority decisionmaking are not uncommon. This court has repeatedly chastised the FLRA ... for its delay in deciding cases.") (citations omitted); *National Association of Government Employees v. FLRA,* 770 F.2d 1223, 1227 (D.C.Cir.1985) (noting "inordinate delay in Authority's handling of this proceeding"); *National Federation of Federal Employees v. FLRA,* 745 F.2d 705, 709 (D.C.Cir.1984) ("We also find FLRA's lack of timeliness extremely disturbing. It took 15 months for the agency to issue a brief decision...."); *National Federation of Federal Employees v. FLRA,* 681 F.2d 886, 893 (D.C.Cir.1982) ("[T]he FLRA [took] nearly two years to decide a relatively simple case.... Even more unfortunate, it appears that the delay in this case was not unusual.... Clearly this is not what Congress envisioned ... and it does not fulfill

the Authority's 'responsibil[ity]' for carrying out the purpose of [Title VII of the Civil Service Reform Act],'.... We can only admonish the Authority in the strongest possible terms to improve upon its sad performance.") (citations omitted).

To her credit, the Authority's Solicitor, on brief and in her appearance at oral argument, did not essay a defense of the FLRA's once dismally bogged-down dispositional record. Instead, she stressed the Authority's recent progress toward effective control of its adjudicatory docket. We now turn from the FLRA's years of "sad performance" to the efforts lately launched by the Authority to accomplish case processing· and decision efficiently and on time.

## II.

We note first that, since the commencement of this court proceeding, the FLRA has decided all of the unfair labor practices cases, and at least six of the eleven negotiability appeals enumerated in AFGE's mandamus petition. Two of the remaining negotiability appeals have been held up for a reason beyond the Authority's control. The FLRA "is composed of three members," 5 U.S.C. § 7104(a) (1982); since August 1984, however, the Authority has had an unfilled place. A number of cases, including the two to which we just referred, have been delayed because the Authority divided 1–1 and a third vote is needed to break the tie.[2]

The FLRA's decision of several cases on AFGE's list is not fairly discounted as simply an agency's immediate but impermanent response to the stimulus of court review. In 1984, the FLRA established an Office of Case Management to facilitate and monitor the processing and decision of cases. With that Office in operation, the Authority closed 822 cases in fiscal year

---

**2.** For a General Accounting Office (GAO) report on the impact of recess appointments and the lack of a third member on FLRA operations, see *Effects of Unconfirmed Members at the Federal Labor Relations Authority,* General Accounting Office Report to the Chairman, Committee on

Post Office and Civil Service, House of Representatives, GAO/GGD–86–29 (Dec. 9, 1985). The GAO estimated that about one-fourth of the Authority's caseload was delayed because of the lack of a third member. *Id.* at 5.

1985, the highest number in any year in the agency's history.[3] The current management program includes a computerized case tracking system[4] and a "lead" case approach under which the FLRA identifies for priority decision representative cases raising significant issues common to several cases pending before the Authority.[5]

In addition to notable progress recently made, the FLRA's published goals convince us that the Authority has embarked in earnest on a mission to reduce the size and age of its case lists. The FLRA has set these internal goals: first, "by the end of fiscal year 1986, cases will be processed from the date of receipt to the date of decision in 180 days or less"; and second, "by September 30, 1986, the Authority will have no cases older than six months on its adjudicatory docket." Affidavit of Jacqueline R. Bradley, Executive Director/Administrator of the FLRA, April 1, 1986, *reprinted in* Supplemental Brief for the Federal Labor Relations Authority, Addendum D.[6]

---

If the FLRA diligently pursues its current case management endeavors, there will be no need for a court order compelling agency action unreasonably delayed. Should the Authority fail to act with due diligence in striving to meet its internal goals, AFGE may return to court for appropriate relief.

For the reasons stated, the petition for mandamus is dismissed without prejudice to renewal, and expedited consideration, should circumstances so warrant.[7]

*It is so ordered.*

3. *Id.* The FLRA has tendered these comparisons, *inter alia:* (1) on October 1, 1983, its overall case inventory was 880 cases, in contrast to 460 on October 1, 1985; (2) on October 1, 1983, 292 negotiability appeals were pending before the agency, in contrast to 220 on October 1, 1985. *See* Brief for the Federal Labor Relations Authority at 8.

4. *See id.* Addenda B and C (Affidavits of the FLRA's Computer Specialist and Managing Director for Case Processing).

5. *See* Supplemental Brief for the Federal Labor Relations Authority at 6–7.

6. These goals were stated by the Authority's Chairman in a speech at a Society of Federal Labor Relations Professionals symposium. *See* 24 Gov't Empl.Rel.Rep. (BNA) 233 (Feb. 24, 1986).

7. Our disposition renders moot the FLRA's motion, filed April 1, 1986, to dismiss the petition as it pertains to particular cases, and we hereby dismiss the April 1 motion.