AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL–CIO, LOCAL 2303, Petitioner,

v.

FEDERAL LABOR RELATIONS AUTHORITY, Respondent.

No. 85–1248.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 15, 1986.

Decided April 3, 1987.

Margaret Pena, with whom Mark D. Roth was on the brief, for petitioner.

Pamela P. Johnson, Attorney, Federal Labor Relations Authority, with whom Ruth E. Peters, Sol., and Steven H. Svartz, Deputy Sol., Federal Labor Relations Authority, were on the brief, for respondent.

Before ROBINSON and STARR, Circuit Judges, and WRIGHT, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge SPOTTSWOOD W. ROBINSON, III.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

Local 2303 of the American Federation of Government Employees challenges an order of the Federal Labor Relations Authority dismissing as untimely the union's petition for review of a collective bargaining dispute over the negotiability of certain

issues under provisions of the Civil Service Reform Act of 1978.[1] We find that FLRA's decision was neither arbitrary nor capricious, and we therefore affirm.

## I

In 1984, AFGE Local 2303 was engaged in bargaining with the Federal Aviation Administration over the status of employees at National and Dulles Airports. On August 24 of that year, the union submitted a request for a written allegation concerning the negotiability of a proposal that the agency provide, under certain conditions, overtime compensation and travel expenses to employees commuting to the airports.[2] The agency replied on August 31 by declaring the proposal to be inconsistent with federal regulations and thus outside the duty to bargain.[3] Instead of then appealing the decision to the Authority, the union continued to bargain, and on October 15 submitted to the agency a second, abridged proposal.[4] The latter, in response, asserted that the new proposal contained only language it had already deemed nonnegotiable, reaffirmed its August 31 position, and announced that "[a] separate

allegation of nonnegotiability [was] not appropriate." [5]

Resigned to seeking the Authority's intercession, the union, on October 29, 1984, petitioned for review of the agency's non-negotiability allegation.[6] The petition would have been timely had the statutorily-prescribed fifteen-day time limit[7] been measured from the date of the agency's rejection of the second proposal, but the Authority held that the October 23 letter "was, in essence, only a restatement of the earlier allegation."[8] The Authority thus deemed the petition a belated attempt to seek review of the August 31 allegation of nonnegotiability and accordingly dismissed the petition as untimely.[9]

## II

■■ We are to sustain the Authority's order unless it is arbitrary, capricious, an abuse of discretion, or otherwise unlawful.[10] The potential locus of arbitrariness in the present litigation is the Authority's conclusion that the union's second proposal "effected no changes in the substance or language" of the original proposal.[11] The

1. 5 U.S.C. §§ 7101–7135 (1982 & Supp. II 1984).

2. Letter from John W. Mulholland, AFGE, to Betsy L. Gaston, FAA (Aug. 24, 1984), Supplemental Appendix (Supp.App.) 11.

3. Letter from Betsy L. Gaston, FAA, to John W. Mulholland, AFGE (Aug. 31, 1984), Joint Appendix (J.App.) 5. The precise basis for the agency's allegation is impossible to discern; the letter asserted in the most general of terms that §§ 6 and 7 of the proposal conflicted with provisions of the "Federal Travel Regulations" and "the Federal Personnel Manual, 5 C.F.R. 551." *Id.* The adequacy of the legal support for the allegation of nonnegotiability would have been a matter for the Authority to determine had it not adjudged the union's petition untimely. For present purposes it is sufficient to note that however vague the agency may have been in alleging grounds of inconsistency, it unequivocally stated its view that the proposal was non-negotiable because inconsistent with provisions of federal law, identifying the sections of the proposal giving rise to the alleged conflict.

4. Letter from John W. Mulholland, AFGE, to Betsy L. Gaston, FAA (Oct. 15, 1984), Supp.App. 6.

5. Letter from Betsy L. Gaston, FAA, to John W. Mulholland, AFGE (Oct. 23, 1984), J.App. 4.

6. Letter from John W. Mulholland, AFGE, to Henry Frazier, FLRA (Oct. 29, 1984), J.App. 1.

7. 5 U.S.C. § 7117(c)(2) (1982); 5 C.F.R. § 2424.3 (1986).

8. *AFGE Local 2303 & Metropolitan Washington Airports, FAA,* 17 F.L.R.A. No. 8, 17, 18 (1985) (order dismissing petition for review).

9. *Id.*

10. 5 U.S.C. § 7123(c) (1982) (incorporating by reference § 706 of the Administrative Procedure Act). See *National Treasury Employees Union v. FLRA,* 223 U.S.App.D.C. 364, 369, 691 F.2d 553, 558–559 (1982).

11. *AFGE Local 2303 & Metropolitan Washington Airports, FAA, supra* note 8, 17 F.L.R.A. at 18. The union asserts that "the FLRA clearly erred as a matter of fact," Brief for Petitioner at 11, and so would appear to suggest that the Authority's conclusions are findings of fact reviewable for conformity to the "substantial evidence" standard, see 5 U.S.C. § 7123(c) (1982), or perhaps under a more rigorous "clearly erroneous" standard. To the contrary, it is settled that an agency's interpretation of a written document is a determination of a question of law, which

union contends that the revised proposal was "materially different"[12] from the original, and that the agency's letter of October 23 should therefore have triggered a new fifteen-day appeal period. The union concedes that the second proposal contained no new language, but insists that its elimination of specific provisions regarding travel-time compensation was sufficient to differentiate the two proposals and qualify the truncated submission for an independent negotiability allegation. Lack of explication in the agency's August 31 letter,[13] the union says, left it unable to ascertain the agency's view of the asserted conflict between the first proposal and federal law; without guidance, the union adds, it was left to speculate as to the nature of the agency's negotiability objections, and was led to make the deletions whereby the second proposal was fashioned from the first in an effort to respond to them.[14] The union maintains that it acted reasonably when it chose to continue negotiations in an attempt to modify the proposal to the agency's satisfaction, and that it should not be penalized for its failure to comprehend the breadth of the agency's objection.[15]

For its part, the Authority simply reiterates its conclusion that the union's second proposal merely omitted portions of its first proposal,[16] which the agency had al-

---

courts may, but need not, adopt. *City of Ukiah v. FERC*, 234 U.S.App.D.C. 307, 310, 729 F.2d 793, 796 (1984); *Federal-Mogul Corp. v. NLRB*, 566 F.2d 1245, 1256 (5th Cir.1978); *Danks v. Fields*, 696 F.2d 572, 575 (8th Cir.1982). When, however, an interpretation implicates factors within the area of an agency's expertise, deference is due the agency's construction. See *NLRB v. Hasbro Indus.*, 672 F.2d 978, 983–984 & 984 n. 8 (1st Cir.1982) (construing employer's pre-election letters to organizing employees) ("[t]he Board's assessment of the overall import of the employer's comments in the industrial setting is entitled to respect").

Moreover, the pivotal issue is whether, for purposes of § 7117(c)(2)'s deadline, the union's first and second proposals are to be viewed as identical, or rather as distinct. Determination of this question ultimately requires consideration of the competing policies—collective bargaining over disputes, and expeditious resolution—which Congress sought to effectuate by means of the appeals procedure detailed in the statute. See Part III *infra*. Adjudications of this character must rest in the first instance with the Authority and we must sustain them unless arbitrary or capricious. See note 20 *infra*. Cf. *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 617–618, 620, 89 S.Ct. 1918, 1941–1943, 23 L.Ed.2d 547, 580–586 (1969) (where statutory scheme requires balancing of employer's right to free expression and employees' right to organize, "reviewing court must recognize the Board's competence in the first instance to judge the impact of utterances made in the context of the employer-employee relationship") (citation omitted).

**12.** Brief for Petitioner at 16.

**13.** See note 3 *supra*.

**14.** Brief for Petitioner at 13–14.

**15.** Brief for Petitioner at 17–19.

**16.** The original proposal read as follows:

Proposal I (Section 6)
a. Details, temporary duty and reassignments, etc., for periods of less than 6 months shall not be deemed as changing the designated post of duty. "Designated post of duty" may mean either Dulles Airport or National Airport, but not both. When a Police Officer is detailed, reassigned, etc., from one designated post of duty to the other for less than 6 months, he/she will be compensated for extra time spent in travel, and for extra mileage if he/she opts to use his/her POV.
b. For FLSA purposes, each trip from home shall be deemed to be a "one-day trip" in accordance with FPM Letter 551–10 of April 30, 1976. Thus, when Police Officers are required to report to a TDY station on a 1-day trip at a time which corresponds to the commencement of their workday, they will be compensated at the overtime rate from the time they leave their designated post of duty until they reach the TDY station or commence work.
c. When a Police Officer leaves from his/her residence to report directly to a TDY station, his/her normal commuting time between his her [sic] residence and designated post of duty will be subtracted from his/her travel time to determine that amount of time, if any, to be compensated at the overtime rate. The reverse procedure will be utilized to determine what amount of overtime, if any is appropriate for the trip back to the designated post of duty, or to the Police Officer's residence.
Proposal II (Section 7)
In similar fashion, and in accordance with 41 CFR 101, *et seq.*, mileage will be payable at the highest rate then authorized by the CFR for all excess miles driven. "Excess miles" are defined to be all miles from the designated post of duty to the TDY station or, when a Police Officer leaves from his/her residence to report directly to a TDY station, his/her normal mileage between his/her residence

ready declared nonnegotiable in its entirety. In its opinion dismissing the union's petition for review as untimely filed, the Authority characterized the second proposal as "merely a recombination of some of the parts of the original three part proposal which the Agency previously determined, on August 31, 1984, to be nonnegotiable," and expressed the view that "[t]he recombination of those parts effected no changes in the substance or language of the parts." [17] In announcing this decision, the Authority provided no test for determining whether one proposal is the same as another; instead, the Authority rested its opinion on the narrow judgment that the abridged proposal came within the scope of the agency's original allegation of nonnegotiability.

Although under other circumstances a more elaborate statement of the Authority's reasoning might be necessary,[18] we cannot disturb its conclusion in this case. The Authority is free to proceed on a case-by-case basis without formally articulating rules of general applicability,[19] and its expert constructions and applications of its organic statute are generally entitled to considerable deference.[20] Here

and designated post of duty will be subtracted from his/her mileage actually driven to determine that amount of mileage, if any, to be paid. Police Officers who utilize public transportation will have their time and fares computed in parallel fashion. When the reassignment is for more than 6 months, relocation expenses will be paid.

Brief for Petitioner at 3–4. The revised proposal combined all of § 6a with the first sentence of § 6b, and excised the remainder. *Id.*

17. *AFGE Local 2303 & Metropolitan Washington Airports, FAA, supra* note 8, 17 F.L.R.A. No. 8 at 18.

18. Had, for example, the agency claimed nonnegotiability with respect to only a portion of a proposal, or clearly stated specific grounds for its allegation that a proposal was inconsistent with federal law, a union's subsequent submission of a proposal retaining some·sections unaltered but deleting other potentially objectionable sections would, we think, call for more extended analysis by the Authority before we could accept its determination that the proposals were materially the same for purposes of § 7117(c)(2)'s filing deadline. Here, by contrast, the agency, unqualifiedly alleged nonnegotiability with respect to both "[s]ections 6 and 7." See Letter from Betsy L. Gaston, FAA, to John W. Mulholland, AFGE (Aug. 31, 1984), J.App. 5. The Authority may, in appropriate circumstances, treat abridgements or recombinations of the constituent elements of a proposal deemed nonnegotiable as a resubmission of that proposal for purposes of § 7117(c)(2)'s filing deadline. Such a judgment is implicit in its observation that "[the parts of the original proposal] effected no changes in the substance or language of the parts." *AFGE Local 2303 & Metropolitan Washington Airports, FAA, supra* note 8, 17 F.L.R.A. No. 8 at 18.

While the Authority might have made plainer the basis of its decision, we think it made clear enough the principles informing its judgment for purposes of review. In this regard, we heed the Supreme Court's counsel that "[w]hile we may not supply a reasoned basis for the agency's action that the agency itself has not given ..., we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transp. v. Arkansas-Best Freight Sys.,* 419 U.S. 281, 285–286, 95 S.Ct. 438, 442, 42 L.Ed.2d 447, 456 (1974) (citing *SEC v. Chenery Corp.,* 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995, 1998 (1947); *Colorado Interstate Gas Co. v. FPC,* 324 U.S. 581, 595, 65 S.Ct. 829, 836, 89 L.Ed. 1206, 1219 (1945)); accord *Miller v. Lehman,* 255 U.S.App.D.C. 278, 283, 801 F.2d 492, 497 (1986). By no means do we wish, however, to voice approval of the style of Authority decisions, which, as we have already had occasion to observe, tend in a most troubling fashion, toward conclusory assertion rather than reasoned justification. See *National Fed'n of Fed. Employees, Local 1669 v. FLRA,* 240 U.S.App.D.C. 329, 332–333, 745 F.2d 705, 708–709 (1984).

19. *SEC v. Chenery Corp., supra* note 18, 332 U.S. at 202, 67 S.Ct. at 1580, 91 L.Ed.2d at 2002 ("[n]ot every principle essential to the effective administration of a statute can or should be cast immediately into the mold of a general rule. Some principles must await their own development, while others must be adjusted to meet particular, unforeseeable situations").

20. *Bureau of Alcohol, Tobacco & Firearms v. FLRA,* 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195, 202 (1983); *American Fed'n of Gov't Employees v. FLRA,* 250 U.S.App.D.C. 229, 235, 778 F.2d 850, 856 (1985); *Defense Logistics Agency v. FLRA,* 244 U.S.App.D.C. 22, 32–33, 754 F.2d 1003, 1013–1014 (1985); *National Treasury Employees Union v. FLRA, supra* note 10, 223 U.S.App.D.C. at 369–370, 691 F.2d at 558–559; see also *Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694, 703 (1984) (where a "statute is silent or ambiguous with respect to [a] specific issue, the question for the court is whether the agency's answer is based on a per-

the Authority determined that in light of the agency's unqualified allegation of non-negotiability in response to the union's first proposal, the union's second submission, which lacked any new proposition or language, was in essence a resubmission of the same proposal for purposes of Section 7117(c)(2)'s filing deadline. The Authority's judgment was reasonable under all the circumstances, and we decline to overturn it.

## III

Perhaps conscious of the fragility of its principal challenge, the union also makes several arguments purporting to demonstrate dire consequences for collective bargaining posed by the Authority's decision. According to the union, the decision will disrupt the collective bargaining process by arming agencies with the means to force immediate and time-consuming appeals of nonnegotiability allegations—thus suspending further negotiations over issues touched on by the contested proposals, obstructing bargaining generally, and ensnaring unions into a fruitless cycle of agency objection and appeal. The Authority's decision, the union claims, impedes the give-and-take between negotiating parties that is a necessary part of the bargaining process.[21]

We have often chided the Authority for its tardiness in processing appeals,[22] but this case does not involve any claim of unreasonable delay. More to the point, the union's fear that the Authority's decision invites manipulation by agencies is unjustified because the decision to trigger the review process, whose stringent time limit the union here protests, remains in the hands of the bargaining union, not the agency. The Authority's regulations clearly inform that the fifteen-day period for appealing agency allegations does not begin to run until the union receives an agency's written allegation of nonnegotiability which has been issued in response to a written union request for a negotiability determination;[23] the union itself thus controls commencement of the appeal period. Where an agency issues an allegation not solicited by a bargaining union, the Authority holds it starts the running of the fifteen-day period only if the union chooses to bring an immediate appeal; the union may, instead, continue to negotiate and then launch the review process by formally requesting a written allegation.[24] Finally, and perhaps most importantly, informal oral assessments of negotiability of proposals advanced during negotiations may be elicited from the agency without activating the formal appeal process.[25] As the Authority has observed,

[b]y providing that an agency's allegation that a union's proposal is not within the duty to bargain must be made only in response to the union's request for an allegation, the Rule ensures that a union will not be diverted from further negotiations and forced to file an appeal before it wishes to do so, simply to avoid losing its right of appeal by the running of the time limit. Rather, the Rule preserves the union's right until it requests an allegation, thereby enabling it first to propose alternatives or to bargain over agency counterproposals as a means of resolving the dispute without invoking third-party intervention.[26]

missible construction of the statute"); *American Fed'n of Gov't Employees v. FLRA*, 255 U.S.App. D.C. 94, 97, 798 F.2d 1525, 1528 (1986).

21. Brief for Petitioner at 18–20.

22. See, e.g., *In re American Fed'n of Gov't Employees*, 252 U.S.App.D.C. 294, 790 F.2d 116 (1986); *FLRA v. Office of Personnel Management*, 250 U.S.App.D.C. 223, 225, 778 F.2d 844, 846 (1985); *National Fed'n of Fed. Employees, Local 167 v. FLRA*, 220 U.S.App.D.C. 371, 377–378, 681 F.2d 886, 892–893 (1982).

23. 5 C.F.R. § 2424.3 (1986).

24. *Production Employees Union, Local 1276 & Defense Logistics Agency*, 9 F.L.R.A. No. 127, 919, 920–921 (1982).

25. See *id.* at 920 (emphasizing role of written requests in triggering formal appeals process); see also *American Fed'n of Gov't Employees, Local 3385, & Federal Home Loan Bank Bd.*, 7 F.L.R.A. No. 58, 398, 400 (1981) (major objective of the regulations is to "foster[ ] the amicable settlement of disputes through collective bargaining rather than through utilization of the Authority's process").

26. *Id.* at 400–401.

The Authority's decision in this case in no measure diminishes a union's control over initiation of the appeal process.

The union further suggests that the Authority's order compromises the integrity of the process established by Congress for collective bargaining. By contrast, it appears to us that concerns of procedural integrity support the disposition the Authority made here. The procedure governing appeals of nonnegotiability allegations obviously demands some judgment as to whether serial proposals are identical or distinct, for otherwise the time limits of Section 7117(c) would become meaningless. Without a judgment of the sort the Authority exercised in this case, a union could resubmit any number of substantially identical proposals for agency allegation and thereby extend indefinitely the period during which it is eligible to file for review of that allegation.

The union objects additionally to the Authority's decision on the grounds that it impedes the give-and-take necessary for effective collective bargaining. The latitude the union seeks in appealing might, as a practical matter, facilitate bargaining in some instances, but it does not comport with the scheme Congress established in Section 7117(c) to ensure speedy resolution of negotiability disputes. Congress did not leave judgments on proper timing of agency review to the union's discretion; once a union has solicited a formal written negotiability allegation, it must appeal from that allegation, if it so wishes, within the fifteen-day period Congress prescribed.[27] As this court has observed, "[t]he appeals procedure is ... intended to resolve negotiability disputes speedily, thereby minimizing the interruption of normal collective bargaining. If Congress' purpose is to be achieved, the statutory time limits for filing union appeals, agency statements and union responses must be strictly observed."[28] The Authority's exercise of judgment in this case was necessary to preserve the integrity of this process, and appears to us reasonable in all respects.

The union freely chose to request from the agency a written allegation concerning the negotiability of its initial proposal. By its own action it thus set into motion the review process in which it then failed timely to participate. The union's objection to time-barring of its appeal is therefore rejected, and the Authority's order in this case is

*Affirmed.*

---

**27.** See 5 U.S.C. § 7117(c)(2) (1982).

**28.** *National Fed'n of Fed. Employees, Local 167 v. FLRA, supra* note 22, 220 U.S.App.D.C. at 375, 681 F.2d at 890.